McMonigle, Appellant, *v.* Philadelphia.

Argued November 12, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Charles Polis,* with him *Polis & Polis,* for appellant.

*Abraham Wernick,* Deputy City Solicitor, with him *David Berger,* City Solicitor, and *Levy Anderson,* First Deputy Solicitor, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, December 29, 1956:

On March 24, 1952, the plaintiff in this case, Frank X. McMonigle, was discharged by the pertinent municipal authorities from his position as clerk in the Children's Agent Division of the office of the County Commissioners of Philadelphia at a salary of $3340 per annum. Nearly four years later, on January 29, 1956,

he instituted mandamus proceedings against the City of Philadelphia and its City Commissioners demanding reinstatement. The defendant City filed preliminary objections seeking a more specific complaint, whereupon McMonigle filed an amended complaint alleging that he had been dismissed without cause and in violation of Section A104 of the Philadelphia Home Rule Charter. The City filed an answer denying the plaintiff's assertions and averring on the contrary that: (1) The plaintiff was derelict in his duties, arriving late for work and leaving early; (2) The plaintiff failed to cooperate with and follow the instructions of his superior; (3) The City reduced the number of employes in the Childrens Bureau so that in effect the plaintiff's job was eliminated; (4) The plaintiff had himself resigned on March 24, 1952, and applied for withdrawal of all moneys paid by him into the Pension Fund. Under New Matter the defendant charged the plaintiff with laches.

In his reply to the New Matter the plaintiff stated that he delayed taking legal action against the City because of certain so-called test cases, later designated as *Lennox v. Clark*, 372 Pa. 355 and *Commonwealth ex rel. Truscott v. Philadelphia*, 380 Pa. 367. The defendant filed a motion for summary judgment on the pleadings, which was granted in the Court below. The plaintiff has appealed, asking reversal.

There are many reasons supporting the action of the lower Court. No employer is required to maintain more employees than he needs, and, least of all, should he be compelled to retain an employee who makes a practice of arriving late and leaving early. Tardy arrivals and premature departures on the part of personnel can do more damage to the success of an enterprise than an army of hungry moles gnawing at the founda-

tion of the building which houses it. There was a time, now probably happily passed, when government job-holders were almost expected to treat the clock with scorn, and the calendar with equal disrespect, payday being about the only day when attendance was automatically assured. A good day's work was then regarded as an exception rather than a routine performance. That the position held by the plaintiff in this case came close to being such an antiquated sinecure is evidenced by the fact that it was eliminated, without not only not adversely affecting the productiveness of the office, but apparently increasing the efficiency thereof. Moreover, the plaintiff has practically admitted to the superfluity of his past post when he says in his amended complaint that it has not been filled for four years. He seeks, however, to give substance to vacuity and virtue to indiscretion by arguing that since no salary was paid to a substitute for his job, the City was not prejudiced by his delay in filing this action, and that, therefore, by paying him some $15,000 back salary no one loses anything.

In support of this ingenious plea the plaintiff cites the case of *Commonwealth ex rel. Oliver v. Wilkes-Barre*, 365 Pa. 24, where involuntarily retired policemen unsuccessfully sought reinstatement to their positions one year after they had been receiving pension checks. In that case this Court quoted with approval from the case of *Schearer v. Reading*, 346 Pa. 27, which quoted from *U. S. ex rel. Arant v. Lane*, 249 U. S. 367, in which Justice CLARK said: "When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert

his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service."

On the basis of what was said in the *Oliver* case, the plaintiff argues that since the decision there was a just one, because to reinstate the retired policemen would have meant double payment of salary, the reinstatement here would be a very just one because no successor has been occupying his occupational niche in the city government and, therefore, double payment would not follow. But the $15,000 which the plaintiff claims, is not lying around loosely. It is not to be found dangling on a plum tree of excess wealth, waiting only to be plucked by someone who will reach for it. Every $15,000 which the City of Philadelphia expends comes from the pockets of taxpayers, and it would be adding insult to injury to require them to pay that amount to the plaintiff for doing absolutely nothing, when they have already paid him for doing less than his job required—when he was there.

But the fatal fault in the case of the plaintiff, and it is on this phase of the controversy that we base our decision, is that he waited 46 months to assert his alleged right to the employment which was once his. Government is a complex organization which cannot function effectively if any branch of it lacks smooth operation, continuity, and adequate personnel. If McMonigle's position was an essential one, it was not only to his interest but to that of the City's also that its continuing existence be decided forthwith. His job, as slight as it may have been, as against many which paid larger salaries and were more supervisory, was still of consequence since it was located in the Children's Bureau, dedicated as such a Bureau is to the protection

of any municipality's greatest resources, namely, its future citizenry.

If an act of injustice was committed in dismissing McMonigle and if, as a result of that injustice, the City itself, to the extent that the job was essential, suffered a disadvantage, the City could not limp along for four years while McMonigle decided whether or not to call attention to the alleged break in the efficiency of the municipal government.

Although the plaintiff cites several cases in his brief, not one can be advanced as authority in exculpation of laches of so gross a nature as the one which corroded the wheels of litigation here. Laches is to a legal right what rust is to metal. Unless the rust is arrested or removed it will consume the metal to which it is encrusted; unless the laches is unfastened it will destroy the right to which it clings in strangling embrace.

The plaintiff apparently realized that his claim had suffered a crippling deterioration because of the time it had lain in atrophying disuse, and he accordingly attempted to explain away the glaring impairment by saying that he was compelled to wait until other lawsuits on a kindred subject had been decided by this Court. If the adjudication of his asserted rights depended upon other cases, it would have been a simple matter to have filed his lawsuit and announced his willingness to abide the outcome of the pilot litigation for a determination of his own rights. He did not do this. So far as appearances were concerned it could be assumed that he had abandoned all thought of attempting to re-enter his comfortable nook in the Childrens Bureau or any other like bureau of the City government. This assumption gains strength, as already indicated, from the historical fact that as early as March 25, 1952,

he wrote to the Board of Pensions stating: "I herewith make application to withdraw from the Pension Fund, the amount which I have paid thereto, having ceased to be an employee of the City and County of Philadelphia."

However, even if we were to accept at face value the plaintiff's assertion that he awaited the decision of this Court in the two cases mentioned, before initiating his action in Mandamus, there is no explanation as to why, once those decisions were handed down, he did not then immediately file his Complaint. The case of *Lennox v. Clark*, 372 Pa. 355, was decided on January 5, 1953, and the controversy in *Commonwealth ex rel. Truscott v. Philadelphia*, 380 Pa. 367, terminated on January 12, 1955. Thus, even after the echoes of the last battle in the field of legal strife he was supposedly studying had died away, he still did not bestir himself for another year, somnolently lingering in the lobby of indecision, apparently expecting that world affairs would remain constant and that his now moss-covered cranny in City Hall would indefinitely await his leisurely return.

The pattern of tardiness which characterized the plaintiff at his work with the City government seems to have symbolized his procrastination in court. The one lost him his job, the other his chance to expatiate on his alleged grievances in the halls of justice.

Judgment affirmed.