466 A.2d 103

The CLASS OF TWO HUNDRED ADMINISTRATIVE FACULTY MEMBERS OF the STATE COLLEGES IN the COMMONWEALTH of Pennsylvania, by James REESER, Barry Wilson and Betty Lu Morgan, Representatives, Appellants,

v.

Robert G. SCANLON, Secretary of Education of the Commonwealth of Pennsylvania, Appellees.

Supreme Court of Pennsylvania.

Submitted May 25, 1983.

Decided Sept. 22, 1983.

Elliot A. Strokoff, Harrisburg, for appellants.

Susan Forney, Deputy Atty. Gen., for appellees.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION

NIX, Justice.

This is an appeal from the order of the Commonwealth Court, 64 Pa.Cmwlth. 387, 440 A.2d 1264, which dismissed appellants' petition for review, in the nature of an action in mandamus, on the basis of the equitable defense of laches.

Appellants are administrative faculty members of various state colleges and one university in the Commonwealth of Pennsylvania.[1] As administrative faculty members, appellants perform primarily administrative functions and possess titles such as *inter alia:* college registrar, director of financial aid, and dean of men/women. In contrast, academic faculty members perform primarily traditional teaching functions.

Prior to June 13, 1974, academic faculty members and administrative faculty members were eligible for and promoted to the maximum faculty ranks specified in the Act of July 30, 1963, P.L. 329, No. 182 § 1, 24 P.S. § 1864.2 (Act 182).[2] In the early 1970's, the Commonwealth became dissatisfied with the system for compensating and promoting state college administrators based upon their academic credentials believing that the disparity was not justified where the individuals, regardless of their academic attainments, were performing identical tasks.

The Commonwealth created a committee to study and evaluate the classification and compensation of administrative positions at the state colleges. As a result of the committee's work, non-faculty administrative class titles and

1. The parties entered into a stipulation of facts which was incorporated into the Commonwealth Court's additional findings of fact.

2. Act 182 provides four rank classifications for faculty members: professor, associate professor, assistant professor and instructor. 24 P.S. § 1864.2 (Supp.1983–84).

corresponding pay schedules were created by the Commonwealth for the state colleges. The new class titles and compensation reflected the functions of the administrative jobs performed rather than being based solely upon academic credentials. This new "rank ceiling" policy[3] was implemented by the Commonwealth, Department of Education, on June 13, 1974. Academic faculty members continued to be eligible for and promoted to the maximum ranks specified in Act 182. The rank ceilings have had the effect of holding administrative faculty members at lower pay classifications than academic faculty members of equal seniority and educational qualification.

Appellants are members of the collective bargaining unit consisting of all the administrative faculty of the thirteen state colleges and Indiana University. The Association of Pennsylvania State College and University Faculties (APSCUF) is the exclusive bargaining agent for this administrative faculty unit. APSCUF filed two grievances pursuant to the collective bargaining agreement challenging the Commonwealth's rank ceiling policy as violative of Act 182. In the first grievance, decided January 8, 1977, the arbitrator held that the rank ceiling policy was not reviewable under the terms of the collective bargaining agreement and denied the grievance. The second grievance was denied on August 15, 1979 for substantially the same reasons.

On November 18, 1977, a petition for review, in the nature of an action in mandamus, the subject of the instant appeal,

3. The rank ceiling policy created new classifications and a corresponding pay schedule for administrative faculty members, designated "State College and University Administrator I–V."

| Class | Rank Ceiling |
|---|---|
| State College or Univ. Adm. I | (No Rank Authorized) |
| "          "          "          "          " II | Instructor |
| "          "          "          "          " III | Instructor |
| "          "          "          "          " IV | Assistant Professor |
| "          "          "          "          " V | Assistant Professor |

Moreover, those faculty members who had already exceeded the new rank ceilings were permitted to retain their position and pay rate, but further promotions were prohibited.

was filed in the Commonwealth Court.[4] The Secretary of Education, by way of new matter in its answer, pled *inter alia* the affirmative defense of laches. The Commonwealth Court agreed and held the claim barred.

## I.

■ "The application of the equitable doctrine of laches does not depend upon the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Wilson v. King of Prussia Ent., Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966); *accord, In Re Estate of Marushak,* 488 Pa. 607, 413 A.2d 649 (1980); *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977); *Holiday Lounge, Inc. v. Shaler Ent., Inc.,* 441 Pa. 201, 272 A.2d 175 (1971); *Siegel v. Engstrom,* 427 Pa. 381, 235 A.2d 365 (1967); *Truver v. Kennedy,* 425 Pa. 294, 229 A.2d 468 (1967). The prejudice required is established where, for example, witnesses die or become unavailable, records are lost or destroyed, and changes in position occur due to the anticipation that a party will not pursue a particular claim. *Kay v. Kay,* 460 Pa. 680, 685, 334 A.2d 585, 587 (1975); *see also Alker v. Philadelphia National Bank,* 372 Pa. 327, 93 A.2d 699 (1953).

■ Thus, it is clear that the application of the defense of laches requires not only an unjustified delay, but also that the opposing party's position or rights be prejudiced as a result of that delay. *Leedom v. Thomas, supra. See also* 2 J. Pomeroy, Equity Jurisprudence § 419d, at 177 (5th ed. 1941). Moreover, "[t]he question of laches is factual and is determined by examining the circumstances of each case." *Leedom v. Thomas, supra,* 473 Pa. at 200–201, 373 A.2d at 1332, and cases cited therein.

---

**4.** The cause was initially filed as a class action, but pursuant to a stipulation of the parties, the class action was terminated and the thirteen named appellants were substituted.

The Commonwealth Court found that a 41 month delay between the imposition of the rank ceiling for administrative faculty members and the filing of the petition for review constituted an unjustifiable delay. That court rejected appellants' argument that the delay was occasioned by their initial attempt to resolve the issue through the arbitration process pursuant to the collective bargaining agreement.[5]

The Commonwealth Court relied on this Court's decision in *McMonigle v. Philadelphia*, 387 Pa. 341, 127 A.2d 675 (1956), as the basis for its holding that appellants in the instant case could not excuse the delay because of their arbitration efforts. In *McMonigle*, we rejected plaintiff's contention that a four year delay in instituting mandamus seeking reinstatement was justified because the plaintiff awaited the outcome of certain "test-cases" allegedly involving the same issues. However, of significance in *McMonigle* was the fact that the plaintiff was a stranger to the "test cases" and that plaintiff made no effort to assert his claim in any forum during the four year delay.

In the instant case, the grievances filed by AP-SCUF involved some, if not all, of the present appellants. Appellants had a direct and immediate interest in the outcome of the arbitration. Moreover, in this Commonwealth there is a strong policy in favor of the arbitrability of labor disputes. *See Scranton Federation of Teachers, Local 1147, AFT v. Scranton School District*, 498 Pa. 58, 444 A.2d 1144 (1982); *Ringgold Area School District v. Ringgold Education Association, PSEA/NEA*, 489 Pa. 380, 414 A.2d 118 (1980); *County of Allegheny v. Allegheny County Prison Employes Independent Union* 476 Pa. 27, 381 A.2d 849 (1977). Appellants, in filing grievances pursuant to their collective bar-

5. The appellants urged that the period of time elapsing before the institution of this suit should have been computed as being ten months, at most. That period of time was arrived at by counting from the disposition of the first grievance petition to the date the suit was filed. In the alternative, appellants argued that there was no delay since the second grievance petition had not been decided when the instant suit was filed.

gaining agreement rather than bringing an immediate court action, were entitled to rely on that policy. Although the first arbitrator held that the collective bargaining agreement did not embrace the issue of the legality of the rank ceilings, the fact that appellants, in good faith, chose the wrong forum does not require this Court to deem them to have slept on their rights. *See So. Pacific Co. v. Bogert,* 250 U.S. 483, 489–490, 39 S.Ct. 533, 536, 63 L.Ed. 1099 (1918).

■ More importantly, under the facts of the present appeal, the Commonwealth has not shown the requisite prejudice to invoke laches. The only basis upon which the Commonwealth alleges prejudice is in the potential payment of back wages in the event the rank ceiling policy is struck down. The Commonwealth has not asserted that witnesses have died, evidence has been lost or that it has significantly altered its position as a result of the alleged delay in filing suit in the Commonwealth Court.

The Commonwealth Court held that the potential back pay award was prejudicial in light of the yearly operating budgets required for the state colleges and universities. It has been recognized that the defense of laches is peculiarly appropriate in instances where government employees, through an action in mandamus, seek *reinstatement* as well as back pay. *See Commonwealth ex rel. Oliver v. Wilkes-Barre,* 365 Pa. 24, 73 A.2d 420 (1950), *citing United States ex rel. Arant v. Lane,* 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919). However, those cases recognized that in the reinstatement context prejudice is demonstrated because new employees have been hired to replace the discharged employee; belated assertion of a discharged employees rights would disrupt the operation of government; the government would potentially be liable for double payment for one position; and the discharged employee, if reinstated, would be paid for not working.

When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his

rights, to the end that if his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service. *United States ex rel. Arant v. Lane, supra* at 372, 39 S.Ct. at 294.

These considerations are inapplicable in the context of the present appeal, which involves *promotions* rather than *reinstatement.* Administrative faculty members continue to perform their duties and earn compensation; displacement of newly hired replacements is not a concern; and double salaries will not be paid for a single service. Thus the potential for requiring retroactive promotions and pay raises, standing alone, does not constitute the prejudice required to invoke the defense of laches. The Commonwealth cannot claim prejudice for having to pay for those services which it has received, assuming appellants are successful on the merits in establishing their entitlement.[6]

For the foregoing reasons, the order of the Commonwealth Court is reversed and the matter is remanded to that court for proceedings consistent with this opinion.

---

**6.** Our rejection of the defense of laches in the instant appeal is not to be construed as indicating a view as to the merits of the case.