**Thomas Vincent LANCOS,**

˙ v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 8, 1996.

Decided Jan. 31, 1997.

---

**8.**  Art. I, § 17 of the Pennsylvania Constitution provides that no law shall be passed impairing the obligation of contracts.

Timothy P. Wile, Assistant Counsel In-Charge, and Harold H. Cramer, Assistant Chief Counsel, Harrisburg, for appellant.

Charles F. Bowers, III, Ambridge, for appellee.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, JR., Senior Judge

DOYLE, Judge.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (the Department) appeals from an order of the Court of Common Pleas of Beaver County, dated March 25, 1996, which sustained the appeal of Thomas Vincent Lancos and vacated license suspensions imposed by the Department.

On January 23, 1992, Lancos was convicted on three counts for violating provisions of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[1] for possessing, possessing with the intent to deliver, and delivering cocaine on January 16, 1991. As a

result, Lancos was sentenced to 11½ to 23 months of incarceration in the Beaver County Prison. Lancos was subsequently granted work release effective March 27, 1992.

By official notices dated April 22, 1992, the Department imposed, separately, two ninety-day suspensions, a one-year suspension, and a two-year suspension of Lancos' driving privileges. Lancos appealed these suspensions to the court of common pleas.

By an order dated September 8, 1992, the court of common pleas sustained Lancos' appeal in part, directing the Department to impose only the one ninety-day suspension and the one-year suspension, whereby Lancos was to be without his license for a total of fifteen months.

The Department appealed to this Court, and we affirmed the order of the court of common pleas on December 7, 1993.[2] *Department of Transportation, Bureau of Driver Licensing v. Hardy*, 160 Pa.Cmwlth. 427, 635 A.2d 230 (1993). Thereafter, by an order dated February 11, 1994, we denied the Department's petition for reargument.

On August 18, 1993, the Department notified Lancos that his operating privileges had been restored from a prior unrelated suspension.[3] As a result of having his driving privileges restored, Lancos was promoted from his position as a "helper" with a flooring contractor, for which he was not required to drive, to a position which requires him to drive his employer's company van.

Over twenty months passed after this Court affirmed the trial court's September 8, 1992 order when finally, on August 29, 1995, the Department sent to Lancos the notices of suspension which are the subject of this appeal. The notices indicated that October 3, 1995, was the effective date of the ninety-day suspension and that January 1, 1996, was the effective date of the one-year suspension.

---

1. Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780–101 to 780–144.

2. The appeal had been consolidated with another appeal filed by the Department with respect to another suspension case involving Charles Edward Hardy.

3. The Department contends that Lancos' operating privileges were restored on this date because he had satisfied the restoration requirements with respect to a prior suspension totally unrelated to the facts and suspensions in this instant appeal.

In the meantime, the position which Lancos had performed, *i.e.*, his "helper" job, which did not require him to operate a motor vehicle, ceased to be available to him. Also during this time, Lancos became accustomed to spending time with his two children, who reside with his ex-wife and of whom he has partial custody. He made visitation arrangements with his ex-wife where he would drive to her home ten miles away, pick up the children, and then return them after spending the week or weekend with them. Lancos also became a member of the Board of Directors of the Beaver County Little League, a position which requires him to travel throughout Beaver County. Finally, Lancos and his sons became involved with a local troop of the Boy Scouts, and he would travel with them to meetings held in another town.

Lancos appealed the suspensions to the court of common pleas. In an opinion and order dated March 25, 1996, the court of common pleas vacated the suspensions and held that the Department's twenty months of inaction constituted an unreasonable delay and that Lancos had been prejudiced by the Department's inaction. This appeal followed.[4]

The suspension of a licensee's operating privileges may be vacated when the Department fails to notify the licensee of the suspension within a reasonable time and the licensee is prejudiced as a result. In *Bennett v. Department of Transportation, Bureau of Driver Licensing*, 163 Pa.Cmwlth. 664, 642 A.2d 1139, 1141 (1994), we held that:

> To sustain an appeal of a license suspension, a licensee must prove that an unreasonable delay chargeable to DOT led the licensee to believe that his operating privileges would not be impaired *and* that he would be prejudiced by having his license

suspended after the delay. (Emphasis in original.)

*See also Department of Transportation, Bureau of Traffic Safety v. Lyons*, 70 Pa. Cmwlth. 604, 453 A.2d 730 (1982).

Although the Department is required to send out suspension notices within a "reasonable time," whether its delay in doing so is "unreasonable" depends upon the circumstances of the particular case. *Davis v. Department of Transportation*, 122 Pa.Cmwlth. 392, 552 A.2d 338 (1988). As we stated in *Lemley v. Department of Transportation*, 97 Pa.Cmwlth. 469, 509 A.2d 1380, 1382 (1986), *petition for allowance of appeal denied*, 514 Pa. 620, 521 A.2d 934 (1987),

> [W]hat will constitute a 'reasonable' time in a given case cannot be established in a vacuum and we believe, therefore, that its meaning will depend upon the circumstances of each case.

However, it is the Department's burden to prove that the delay was caused by some factor other than mere administrative inaction. *Department of Transportation, Bureau of Driver Licensing v. Turner*, 155 Pa. Cmwlth. 106, 624 A.2d 759 (1993).

In this case, the Department has offered no explanation for why it took them over one and one-half years, about twenty months, from the time we affirmed the trial court's decision, to notify Lancos of his suspensions. Moreover, the Department has essentially conceded that the twenty-month delay in notifying Lancos of his suspensions was administrative in nature and attributable entirely to itself. At the hearing, the following exchange took place on the record:

> THE COURT: And the notice they then [sent out] after 18 months [5] ... was a

---

4. Our standard of review on appeal from a final determination of the trial court in an operating privilege suspension appeal is limited to determining whether the necessary findings of fact are supported by competent evidence, whether the trial court committed an error of law, or whether the trial court manifestly abused its discretion. *Hatalski v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 386 (Pa.Cmwlth. 1995). In addition, we must view the evidence in the light most favorable to the party which prevailed before the fact-finder. *Department of*

*Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992).

5. The "18–month" delay referred to by the trial court represents the time between the date on which this Court denied the Department's petition for reargument and the date on which the Department sent to Lancos notices of his suspensions.

suspension that I had originally decided back in [1992] [?]

MR. BOWERS [6]: That is correct.

. . . .

THE COURT: What's your argument, Mr. Giltenboth?

MR. GILTENBOTH [7]: Well, the argument is—

THE COURT: Doesn't it seem like administrative delay, unnecessary delay?

MR. GILTENBOTH: Well, we will start with that possibility, then the burden shifts to Mr. Lancos to show where the prejudice is because the 18 months per se doesn't create an invalid suspension.

(Notes of Testimony (N.T.), 1/31/96, at 5; Reproduced Record (R.R.) at 46a.) Thus, as the trial court subsequently concluded, the delay in this case is both unreasonable under the circumstances and attributable to the Department, and the Department has not challenged this fact on appeal.

However, in order for a suspension to be vacated, a licensee must also establish that he or she would be prejudiced by having his or her license revoked after the delay. In *Evans v. Department of Transportation, Bureau of Motor Vehicles*, 145 Pa.Cmwlth. 27, 602 A.2d 431, 433 (1992), we stated:

> '[P]rejudice' . . . is established when a licensee shows that he, believing his privileges were no longer impaired, changed his circumstances to his detriment.

On appeal, the Department argues that the trial court's finding "that Lancos was prejudiced by the delay from February 11, 1994, through August 29, 1995, is not supported by competent evidence in the record." (Brief for Appellant at 22–23.) We disagree.

■ The record is replete with evidence of prejudice resulting from the Department's twenty months of inaction. For instance, Lancos testified as follows:

Q: . . . Did you at any time from 1993 until you received those suspensions notices in 1995, did you ever receive any other notices from the Commonwealth?

A: No, sir, I thought my suspension was fulfilled; my license was in with the Department for two years.

. . . .

Q: [W]hen you got your license back did your job duties in any way change?

A: Yes, it did. I got that promotion.

Q: Okay. The promotion, what type of promotion was it?

A: Well, I went on my own. I got a company vehicle.

Q: A company van?

A: Yes, sir.

. . . .

Q: And when did you get that promotion?

A: That was in 1993.

Q: Was that after you got your, your license back?

A: Yes, sir.

. . . .

Q: If you didn't have your license, would you be able to do the job you currently have?

A: No, I wouldn't.

Q: [D]o you know whether or not you would be able to go back to your [former] position . . . ?

A: Well that, that position isn't there anymore. When I got promoted the other guys got laid off.

(N.T., 1/31/96, at 11–13; R.R. at 52a–54a.) Lancos further testified that he became a member of the board of directors of the local little league as a result of his belief that his operating privileges would not be further restricted:

Q: You mentioned Little League?

A: Yes, sir.

Q: What have you done with Little League?

A: Well, I am on the Board of Directors of New Sewickley–Freedom baseball.

Q: When did you take that position as a [member of the] Board of Director[s] of New Sewickley and Freedom baseball?

---

6. Mr. Bowers is counsel for Mr. Lancos.

7. Mr. Giltenboth represented the Department before the trial court.

A: Latter 1993.

Q: As a director in that Little League, what do you have to do, what are you required to do?

A: I am chairman of the committees; we set up tournaments, fund raisers, whatever it may be to promote the Little League program.

Q: Where do you meet, where do the Boards meet?

A: It's different all the time, all through Beaver County.

Q: When you say different, what are you talking about; where do you meet?

A: One month we might meet in Harmony Township, one month we might meet in Beaver falls.

Q: ... Would you have taken the Director's position if you didn't have your license?

A: No, sir, I wouldn't have.

Q: Why would you have not done so?

A: Just for transportation reasons.

(N.T., 1/31/96, at 15–16; R.R. at 56a–57a.)

Finally, Lancos testified that, in reliance on the Department's inaction, he and his sons became involved in a local troop of the Boy Scouts, which requires that they travel to various meetings:

Q: Now, is there anything that you have become involved in with your sons as you and your sons together?

A: Well, Boy Scouts is one.

. . . .

Q: Would you have gotten your sons involved in the Boy Scouts if—

A: No, I wouldn't have.

Q: If you couldn't drive?

A: No.

Q: Where are the meetings?

A: They are held in different homes.

Q: Where though?

A: In Freedom.

Q: In Freedom? That's not where your house is?

A: No, it's not.

(N.T., 1/31/96, at 16–17; R.R. 57a–58a.) The record also reflects that Lancos made arrangements with his wife for visiting with their children, of which he has partial custody. He testified that these visitation arrangements entailed calling for the children, taking them back to his home, and then returning them to his ex-wife's house. (N.T., 1/31/96, at 13–14; R.R. at 54a–55a.) Thus, it is clear from the record that Lancos not only changed his employment status on the assumption that his driving privileges were not going to be further restricted,[8] but several other facets of his life as well. Consequently, in considering all of these occurrences together, we cannot say that the trial court erred in determining that Lancos made a sufficient showing of prejudice.

The Department argues at length that Lancos did not sufficiently establish prejudice because Lancos accepted the promotion, which required him to operate a motor vehicle, prior to February 11, 1994, the date on which this Court denied the Department's petition for reargument. However, although our ruling denying the Department's petition for reargument was issued on February 11, 1994, *this Court affirmed the trial court's September 8, 1992 decision on December 7, 1993, which is prior to Lancos' change in employment status.* Moreover, Lancos was notified on August 18, 1993, that his driving privileges had been restored. He was not subsequently notified by the Department that they had been revoked until August 29, 1995, over two years later. When the Department restored his license in August of 1993, Lancos believed that he had fulfilled all of his outstanding suspensions,[9] and this be-

---

**8.** It is well settled that the loss of employment requiring an operator's license constitutes prejudice. *See Rea v. Department of Transportation, Bureau of Driver Licensing,* 132 Pa.Cmwlth. 145, 572 A.2d 236 (1990).

**9.** Although the record is not clear on this point, the Department contends that Lancos' license was restored on this date because he "did not

satisfy the requirements for restoration from [a previous] suspension until August 18, 1993." (Brief for Appellant at 6 n. 2.) However, the Department's records indicate that this previous suspension was supposed to last for only three months, effective January 9, 1992. (R.R. at 102a.) Lancos' operating privileges were not restored until approximately fifteen months after this suspension was supposed to have ended.

lief was reinforced for over two years due to the Department's inaction. Thus, we reject the Department's contention that Lancos failed to establish prejudice merely because his employment status changed prior to the date on which this Court denied the Department's petition for reargument.

 The Department also argues that, for public policy reasons, the equitable doctrine of estoppel by laches should not be successfully invoked against the government. Specifically, the Department argues that "the affirmative defense of estoppel by laches is not available to prevent a Commonwealth executive agency from performing a governmental function." (Brief for Appellant at 10.) We reject this argument for two reasons.

First, although the principle that DOT must revoke operating privileges within a reasonable time is related to the equitable doctrine of estoppel by laches, that principle does not necessarily entail a strict application of the doctrine. *Evans.* The principle truly derives from a former provision of the Vehicle Code requiring the Department to revoke a licensee's operating privileges "forthwith." *See Saron v. Commonwealth,* 55 Pa.Cmwlth. 477, 423 A.2d 1099 (1980). Where the Department failed to do so, any subsequent attempts to revoke the licensee's operating privileges were deemed to be inconsistent with the Code and thus void. *See Davis.* After the Vehicle Code was amended by subsequent legislation, Pennsylvania courts have interpreted provisions of the Code to imply a "reasonable" time within which the Department must act when imposing suspensions. *See Davis; Lemley.* Thus, the principle is not only based on equitable principles underlying the doctrine of estoppel by laches, but also on the requirement that the Department act in accordance with the express and implied terms of the Vehicle Code.

Second, the argument that the doctrine of laches cannot be asserted against a govern-

ment agency is not a viable proposition in this jurisdiction, and we decline to accept such a proposition in this case. To the contrary, as the Department candidly admits in its brief, it is well settled that, in this jurisdiction, the doctrine of laches may be asserted against the Commonwealth. *Class of Two Hundred Administrative Faculty Members v. Scanlon,* 502 Pa. 275, 466 A.2d 103 (1983); *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979). Additionally, we do not believe that the principles underlying the doctrine of laches are any less applicable merely because the party against whom the doctrine is asserted happens to be an agency of the Commonwealth. Consequently, we decline to carve out an exception for the Department in this case.

Order affirmed.

### ORDER

NOW, January 31, 1997, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is hereby affirmed.

The Department contends that "[h]ad [Lancos] requested a hearing for credit before the Department, the Department's records would show that Lancos had been notified several times in 1992 and 1993 that he was eligible for restoration and could have had his operating privileges restored earlier than August 18, 1993, had he complied with the restoration requirements." (Brief for Appellant at 6 n. 2.) However, Lancos testified that, because his license "was in with the Department" for so long before being returned to him, and without an apparent explanation, he believed that the suspensions at issue in this appeal had been fulfilled. (N.T., 1/31/96, at 11; R.R. at 52a.)