Howard ORLOFF, Appellant

v.

COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2006.

Decided Dec. 18, 2006.

H. Allen Litt, Philadelphia, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Howard Orloff (Licensee) appeals from an order of the Court of Common Pleas of Delaware County (trial court) denying his appeal and reinstating a one-year license

suspension of his driving privilege because he failed to establish that he was prejudiced by a delay in the proceedings related to the suspension of his driving privilege that was chargeable to the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Penn-DOT).

On July 19, 1997, Licensee was arrested in New Jersey and charged with violating New Jersey's statute against driving under the influence.[1] Following a trial, he was convicted, and New Jersey sent Pennsylvania a notice of the conviction. PennDOT then sent Licensee an official notice dated October 3, 1997, informing him that his operating privilege was being suspended for one year pursuant to Section 3731 of the Vehicle Code, as amended, 75 Pa.C.S. § 3731,[2] and the Driver's License Compact (Compact), 75 Pa.C.S. § 1581,[3] as a result of his New Jersey conviction.[4] Licensee filed a timely appeal.

A hearing was held before the late Judge Joseph F. Battle, and on June 30, 1998, Judge Battle entered an order granting Licensee's appeal and reversing the suspension. PennDOT appealed to this Court and by order dated July 7, 1998, Judge Battle consolidated Licensee's case with 30 other suspension appeal cases upon which he had already rendered decisions and from which PennDOT had appealed to this Court. The issue on appeal in all of the cases was whether PennDOT had sustained its burden of establishing the basis for the suspension of the licensees' operating privileges by introducing into evidence copies of electronic transmissions from New Jersey which reported the convictions to that state. The licensees contended that the reports failed to comply with the requirements of Article III of

---

1. N.J.S.A. 39:4–50(a) defines a driving under the influence offender as:

   A person who operates a motor vehicle while under the influence of intoxicating liquor ... or operates a motor vehicle with a blood alcohol concentration of .10 percent or more by weight of alcohol in the defendant's blood....

2. Pennsylvania's driving under the influence law was contained in 75 Pa.C.S. § 3731 until February 2004. Effective February 1, 2004, 75 Pa.C.S. § 3731 was repealed and replaced by 75 Pa.C.S. § 3802. This dispute arose when 75 Pa.C.S. § 3731 was in effect and is not affected by its subsequent repeal. 75 Pa.C.S. §§ 3731(a)(1) and (4) provide:

   (a) A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:

   (1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.

   * * *

   (4) While the amount of the alcohol by weight in the blood of an adult is .10% or greater.

3. The Compact is an agreement among most of the states to promote compliance with each party state's motor vehicle law. Pennsylvania became a party state to the Compact in 1996 by adopting Sections 1581–1585 of the Motor Vehicle Code. In order for PennDOT to treat an out-of-state conviction as though it occurred in Pennsylvania, the out-of-state conviction must be from a state that has entered the Compact and enacted a statute to that effect. New Jersey is a party state. See Leftheris v. Department of Transportation, Bureau of Driver Licensing, 734 A.2d 455 (Pa.Cmwlth. 1999).

4. Specifically, the notice stated:

   Section 1581 of the Vehicle Code requires the Department to treat certain out of state convictions as though they had occurred in Pennsylvania. Therefore, as a result of the Department receiving notification from NEW JERSEY of your conviction on 09/09/1997 of an offense which occurred on 07/19/1997, which is equivalent to a violation of Section 3731 of the Pa. Vehicle Code, DRIVING UNDER INFLUENCE, your driving privilege is being SUSPENDED for a period of 1 YEAR(S), as mandated by Section 1532B of the Vehicle Code.

the Compact [5] because they did not contain all of the required information. In 27 of those cases, including Licensee's, we granted PennDOT's appeal, and by order dated September 15, 1999,[6] we reversed in part, affirmed in part and remanded the cases to the trial court for consideration of the issue, where such issue was previously raised, of whether the reporting requirements of Article III of the Compact were met, as articulated in our decision in *Sweet v. Department of Transportation, Bureau of Driver Licensing,* 724 A.2d 1004 (Pa. Cmwlth.1999). (*See* PennDOT's Brief at 5).

Following remand to the trial court, Judge Battle died on March 10, 2001. No further action was taken by the trial court to comply with our remand order until PennDOT sent the trial court a letter dated September 7, 2004, requesting that the cases be listed for hearings. A hearing was held on February 15, 2005, on the issue raised in the remand order as well as on Licensee's contention that his appeal should be granted because he was prejudiced by the unreasonable delay in prosecuting the enforcement of the suspension of his operating privilege.

Before the trial court, Licensee testified that September 1999 was the last time he had heard that his appeal was still pending, that he thought Judge Battle had ruled in his favor, and that he neither checked his driving privilege status with PennDOT nor received notification that the case was over. He stated that he currently owned and operated a wire manufacturing company that he purchased in 1993 and paid off in 2001. Licensee stated that he ran the company office in 1999 and had other persons making sales calls and deliveries, but he now drove the company truck Mondays through Fridays to make sales calls, interspersed with deliveries. He stated that including himself, he employed five people—two who ran machines in the factory and did production, one who ran the office, and another who was the previous owner who resided in Florida but remained on the payroll. He testified that if his license was suspended, he would be required to hire a delivery driver and a less effective salesman which could lead to excess inventory and would increase his payroll. Licensee stated that had he known his driving privilege could be suspended, he would not have gone out on the road in 2001; would not have arranged for a $200,000 line of credit; would not have moved to a far more expensive residence in 2003; would not have entered a lease for an expensive car; and would not have paid a two-year membership to a gym that was not located near public transportation. He also testified that he provided transportation for his mother, and if his license had been promptly suspended, she would not have been adversely affected because she was healthier and able to drive at that time.

By order dated December 29, 2005, the trial court attributed the delay in prosecuting Licensee's appeal of his operating

---

**5.** Article III of the Compact provides:

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

**6.** *See Department of Transportation, Bureau of Driver Licensing v. Avato,* 740 A.2d 1233 (Pa. Cmwlth.1999). This case is unreported but may be cited for the law of the case.

privilege to PennDOT. However, it found that Licensee failed to establish the requisite prejudice resulting from the delay and denied his appeal and reinstated the suspension of his operating privilege. Licensee then filed the present appeal [7] contending that the trial court erred in concluding that he had not suffered prejudice as a result of PennDOT's unreasonable delay in prosecuting the appeal.

■ For a licensee to sustain an appeal of a license suspension based upon delay, he must prove: (1) an unreasonable delay chargeable to PennDOT led the licensee to believe that his operating privilege would not be impaired; and (2) prejudice would result by having his operating privilege suspended after such delay. *Fisher v. Department of Transportation, Bureau of Driver Licensing*, 682 A.2d 1353 (Pa.Cmwlth.1996). What constitutes an unreasonable delay will depend upon the circumstances of each individual case. *Lancos v. Department of Transportation, Bureau of Driver Licensing*, 689 A.2d 342, 344 (Pa.Cmwlth.1997). An administrative delay may be held against PennDOT for purposes of determining whether there was an unreasonable delay. *Ciaccia v. Department of Transportation, Bureau of Driver Licensing*, 782 A.2d 639 (Pa. Cmwlth.2001). Where there is an unreasonable delay, it is PennDOT's burden to prove that the delay was caused by some factor other than mere administrative inaction. *Grover v. Department of Transportation, Bureau of Driver Licensing*, 734 A.2d 941 (Pa.Cmwlth.1999).

Admitting that the five-year delay in this case was unreasonable, PennDOT counters by contending that Licensee did not meet either prong of his burden. It argues that the trial court was responsible for the delay by not reassigning the case to another judge,[8] and judicial delay may not be attributable to it when determining whether there was an unreasonable delay. Because there is no need to address Licensee's argument if the delay is not properly chargeable to PennDOT, we will address that issue first.

To whom the delay is chargeable after a license suspension case has been remanded after appeal was addressed by our Supreme Court in *Terraciano v. Department of Transportation, Bureau of Driver Licensing*, 562 Pa. 60, 753 A.2d 233 (2000). In that case, following the trial court's sustaining of a licensee's appeal of a license suspension, PennDOT appealed to this Court. We reversed and remanded the matter to the trial court for a new hearing, and the matter then lay dormant for seven years before it was reactivated. The licensee contended that his appeal should be sustained because of the unrea-

---

**7.** Our scope of review of a decision in a license suspension case is limited to determining whether the trial court's findings of facts are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Finnegan v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 645 (Pa.Cmwlth.2004).

**8.** PennDOT cites to 42 Pa.C.S. § 325(e) in support of its contention of judicial delay, but that statute is irrelevant in the matter at hand. 42 Pa.C.S. § 325(e) provides:

(e) Powers of President Judge.—Except as otherwise provided or prescribed by this title, by general rule or by order of the governing authority, the president judge of a court shall:

(1) Be the executive and administrative head of the court, supervise the judicial business of the court, promulgate all administrative rules and regulations, make all judicial assignments, and assign and reassign among the personnel of the court available chambers and physical facilities.

(2) Exercise the powers of the court under section 2301(a)(2) (relating to appointment of personnel).

sonable delay in hearing the case after remand, causing him prejudice. Finding that the delay was not chargeable to PennDOT, the trial court reimposed a one-year license suspension. We affirmed but our Supreme Court, however, reversed, holding that the delay was chargeable to PennDOT, explaining:

> The rule that judicial delay may not be attributable to PennDOT in license suspension matters, however, stems from the underlying principle that PennDOT is unable to suspend a driver's license until it receives a certified record from the court system that the licensee has been convicted of an offense for which a suspension may be imposed. *Walsh v. Department of Transp.*, 137 Pa.Cmwlth. 549, 586 A.2d 1034, 1036–37 (1991). Such a situation differs markedly from an appeal from a suspension matter, because the conviction or event for which a suspension may be imposed has already been established. *See id.* at 1037. Thus, despite PennDOT's assertions to the contrary, the judicial delay rule is simply not applicable here. Rather, as discussed above, the delay in the instant case resulted from the laxity of PennDOT, an active party in the appeal proceedings, in allowing this case to languish for seven years.

*Id.* at 237 n. 9.

■ PennDOT contends that this case is much different than what occurred in *Terraciano* because that case was remanded for further evidentiary proceedings, while, in this case, it was only remanded for consideration of a legal issue. In effect, PennDOT is proposing that under *Terraciano*, where a case is remanded for a hearing, the delay is chargeable to PennDOT; however, if no hearing is required, then it is chargeable as a judicial delay and not chargeable to PennDOT. Following PennDOT's reasoning to its logical conclusion would expand *Terraciano's* holding to make PennDOT responsible for any delay where a hearing is required, including the original appeal, because PennDOT, as an active party to the case, is charged "with a duty to keep abreast of all developments in the appeal process." *Terraciano*, 753 A.2d at 236 (quoting *Fisher*, 682 A.2d at 1356).

Given that a license suspension appeal automatically stays the suspension notice and that the General Assembly placed in PennDOT the responsibility to prosecute license suspension cases, much recommends PennDOT's inadvertent suggestion to ensure that no case "falls through the cracks" and license suspensions are imposed as expeditiously as possible. However, where a license suspension case no longer follows the "normal" procedure, the cases relied on in *Terraciano* indicate that our Supreme Court only intended to charge PennDOT with a delay when it causes the license suspension case before the trial court to be waylaid, stating:

> When PennDOT fails to take responsibility for moving a case forward under circumstances where it is reasonable for it to be expected to do so, the delay is attributable to PennDOT. *Howarth v. Department of Transp.*, 124 Pa.Cmwlth. 39, 555 A.2d 285, 286–87 (1989). In *Howarth*, the Commonwealth Court concluded that the onus was on PennDOT to move the proceeding forward when an appeal was continued at PennDOT's request and then not relisted for six years. *Id.* at 287. Likewise, in *Fisher*, the Commonwealth Court found unreasonable delay attributable to PennDOT when PennDOT failed to file a motion to quash a licensee's untimely appeal and allowed the appeal to remain active on the docket for three and one-half years before reinstating the license suspension. *Fisher*, 682 A.2d at 1356.

*Terraciano,* 753 A.2d at 236.[9] *Accord Department of Transportation, Bureau of Driver Licensing v. Gombocz,* — Pa. ——, 909 A.2d 798 (2006) (PennDOT's action in requesting change of venue did not make it responsible for delay because it only started license suspension case anew.)

In this case, PennDOT successfully appealed the trial court's order to this Court. Once it was remanded, its appeal to this Court caused the license suspension case to be outside the "normal" processing of an appeal and more likely to go off track. Under *Terraciano,* PennDOT was responsible for taking the appropriate action to have the case heard and, absent taking such action to carry out its responsibility to prosecute the appeal, PennDOT is charged with the delay.

■ Now to Licensee's appeal and contention that the trial court erred in concluding that he had not suffered prejudice as a result of PennDOT's unreasonable delay in prosecuting the appeal. "Prejudice is shown when the licensee is able to demonstrate that he changed his circumstances to his detriment in reliance on his belief that his operating privileges would not be impaired." *Fisher,* 682 A.2d at 1356. Furthermore, the loss of a job or required closing of a business requiring a driver's license constitutes prejudice. *Id.* Also, prejudice is established when a licensee has changed jobs to a position that requires driving as part of the new job's duties. *Bennett v. Department of Transportation, Bureau of Driver Licensing,* 163 Pa.Cmwlth. 664, 642 A.2d 1139 (1994).

■ Here, the trial court found that Licensee was not prejudiced because his employment situation would not be affected and, at most, other or additional employees would need to perform certain functions and duties which he currently performs.[10] This raises the issue of whether an owner of a multi-employee

---

**9.** In *Tarka v. Department of Transportation, Bureau of Driver Licensing,* 756 A.2d 138 (Pa. Cmwlth.2000), we held that after PennDOT was successful on appeal and the matter was remanded to the trial court, any delay in hearing the case was chargeable to licensee because it was licensee's burden to move the case through the system. Because that holding is inconsistent with *Terraciano,* where PennDOT was also successful on appeal, the matter was remanded to the trial court and PennDOT was charged with the delay, it is overruled.

**10.** The trial court stated:

Thus, the evidence presented by [Licensee] established only that the delay in prosecuting the suspension of his operating privilege would have a possible and marginal effect on his life. His employment situation will not be affected. At most, certain functions and duties which he currently performs will need to be done by other or additional employees. However, as the sole owner of his business, [Licensee] possesses complete autonomy in delegating duties and job functions within the business.

Likewise, his contention that having another individual perform outside sales will have adverse results on the profitability of the business is sheer speculation. No evidence was presented that the outside sales position was so highly specialized as as [sic] to require only [Licensee's] attention nor was there any evidence that the profitability of the business increased after the [Licensee] assumed responsibility for outside sales in 2001. Thus, [Licensee's] inference that he will be prejudiced by having purchased a new home and entered into a lease for an expensive vehicle likewise is mere speculation not based upon any facts presented to the Court.

Accordingly, in the absence of any evidence that [Licensee] was prejudiced by the delay in prosecuting the suspension of his operating privilege, we conclude that [Licensee's] Appeal could not properly be granted. It is for these reasons, therefore, that [Licensee's] Appeal was denied and it is submitted that our decision in this regard is supported fully by the record and the applicable legal authority.

(Trial Court Opinion at 5–6).

business that could use other employees or hire other employees to perform his functions could ever establish that he was prejudiced by the delay in suspending his license. We disagree that prejudice can only be established by the loss of a job or the closing of a business; it can also be established by showing that an owner changed his job duties so that a license is necessary for the financial well-being of his company. In this case, Licensee changed his role to the "outside" person of the company and can no longer reclaim his role as an "inside" person without disrupting his company and incurring additional costs by hiring additional people to do the job that he now performs. Because Penn-DOT's delay in suspending Licensee's operating privilege was unreasonable and Licensee established that he relied to his detriment on the belief that his license would not be suspended, Licensee met his burden of proving that the suspension should not be imposed.

Accordingly, the order of the trial court is reversed.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this *18th* day of *December,* 2006, the order of the Court of Common Pleas of Delaware County, dated December 29, 2005, is reversed.

### DISSENTING OPINION BY Judge LEAVITT.

I respectfully dissent. Assigning responsibility for what was purely judicial delay to PennDOT in this case misapplies the standard established in *Terraciano v. Department of Transportation, Bureau of Driver Licensing,* 562 Pa. 60, 753 A.2d 233 (2000). Further, the majority creates an unworkable standard for future cases where a license suspension matter is re-manded to this Court or to a court of common pleas solely for reconsideration of a legal issue.

In *Terraciano,* as in the case *sub judice,* the trial court sustained the licensee's statutory appeal, and PennDOT appealed to this Court. We found that the trial court had erred in a crucial evidentiary ruling and "reversed the order of the trial court and remanded the matter *for further proceedings.*" *Terraciano,* 562 Pa. at 65, 753 A.2d at 235 (emphasis added). The case languished for seven years until PennDOT praeciped the trial court for a hearing. When confronted with the question of whether to attribute the delay to Penn-DOT or the licensee, the Supreme Court noted that "[w]hen PennDOT fails to take responsibility for moving a case forward *under circumstances where it is reasonable for it to be expected to do so,* the delay is attributable to PennDOT." *Id.* at 66, 753 A.2d at 236 (emphasis added). The Supreme Court attributed the delay to PennDOT because, as the appellant to this Court, it "was responsible for pursuing its appeal to conclusion." *Id.* at 67, 753 A.2d at 236–237. The Supreme Court noted that "to place the case back before the trial court, PennDOT merely had to file a praecipe after the Commonwealth Court issued its order remanding the case...." *Id.* at 67, 753 A.2d at 236.

The case at bar is markedly different from *Terraciano.* Here, this Court's remand order did not contemplate further proceedings; it stated that:

> The case is remanded to the common pleas court *for* [its] *consideration of the issue,* where such issue was previously raised, of whether the reporting requirements of Article III of the Compact were met, as articulated in our decision in *Sweet v. Department of Transportation, Bureau of Driver Licensing,* 724 A.2d 1004 (Pa.Cmwlth.1999).

*Avato v. Department of Transportation, Bureau of Driver Licensing* (Pa.Cmwlth., No. 2138 C.D.1998, filed September 15, 1998) (emphasis added).[1] Stated otherwise, there was no action required of PennDOT to have the appeal concluded. Nevertheless, the majority states in conclusory fashion, purporting to apply *Terraciano*, that "PennDOT was responsible for taking the appropriate action to have the case heard." Majority Opinion at 10. There are several glaring problems with this statement.

First, the majority reaches this conclusion without any explanation as to why it is "reasonable" to impose the burden on PennDOT in the circumstance where the court has failed to act upon a remand. *Terraciano* requires a case-by-case inquiry into the circumstances to determine whether it is "reasonable" to hold Penn-DOT liable. Contrary to this central feature of the *Terraciano* holding, the majority establishes an inflexible rule that arbitrarily chooses PennDOT as the party always liable for a "delay" that results from a court's quiescence in responding to a remand order.

Second, the majority's statement is opaque on what was to be "heard" in this case. The record was closed, and the case was not remanded for further evidentiary proceedings. The trial court was directed to write a new opinion, and it was slow to do so.

Third, the majority offers no analysis of what would be an "appropriate action" by PennDOT in this scenario, where, because of judicial inaction, the matter languishes on the docket. I posit that there is no such mechanism.

Pennsylvania's rules of civil and appellate procedure do not provide for any type of application or motion by which Penn-DOT, or any litigant, can ask a court, appellate or trial, to speed up the discharge of its judicial duties. In this case, PennDOT sent a letter to the trial court, and this step resuscitated the proceedings. However, this informal communication is not an "appropriate" or reliable method for achieving that result in future cases. A petition for writ of mandamus is one possible mechanism but hardly a desirable option. It is doubtful that PennDOT could establish a clear legal right to expedited review, or a corresponding duty in the trial court to comply more quickly with a remand order. Whatever mechanism the majority may have in mind, it places Penn-DOT in the untenable position of acting as a "super-prothonotary" over the docket of any court, including this Court, that is directed by a higher court to reconsider a legal issue in a license suspension proceeding.

Finally, the majority offers no standard for when and how PennDOT must take this "appropriate action." Should Penn-DOT wait six months, a year or two years before nagging the court? Is the standard different depending on whether PennDOT is awaiting a decision from our Supreme Court or from a court of common pleas? Is it different depending on whether the court of common pleas is a single-judge judicial district or has numerous judges? [2]

Unfortunately for Licensee, under applicable precedent, if one of the parties must bear the burden of moving the case forward, it is Licensee, as is suggested by a recent ruling of our Supreme Court in

1. Licensee was one of twenty-seven appellants in *Avato*.

2. PennDOT's new role may be particularly vexing in a single-judge judicial district, where the judge considering PennDOT's request to hasten judicial action and the judge whose action PennDOT seeks to hasten will be one and the same.

*Department of Transportation, Bureau of Driver Licensing v. Gombocz,* —— Pa. ——, 909 A.2d 798 (2006). In *Gombocz,* the Supreme Court soundly reaffirmed the standards and rules of law announced in *Terraciano.* The Supreme Court also cited with approval this Court's decision in *Tarka v. Department of Transportation, Bureau of Driver Licensing,* 756 A.2d 138 (Pa.Cmwlth.2000), for the proposition that "[t]he moving party has the burden to move the case forward." *Gombocz,* 909 A.2d at 801. Because our Supreme Court has effectively given its imprimatur to *Tarka,* it is inappropriate for the majority to overrule that decision today. The rule in *Tarka* should control the outcome of this case.

In *Tarka,* the trial court sustained the licensee's license suspension appeal and PennDOT appealed to this Court. We vacated the trial court's order and remanded "for the Trial Court to re-examine its evidentiary rulings, reverse said rulings if deemed legally correct to do so, and to conduct additional hearings if appropriate." *Id.* at 140. Further proceedings, though contemplated, were not required as was the case in *Terraciano.* Three years passed before the case was eventually docketed for a new hearing. In rejecting the licensee's subsequent claim that the three-year delay was attributable to PennDOT, this Court held:

> [T]his Court's order of April 25, 1995, which vacated and remanded the matter to the Trial Court, returned the parties to the status quo ante. Therefore, Tarka, having initially appealed the Department's suspension of his license in the Trial Court, was again the Appellant and moving party, with the burden of moving his case forward.

*Id.* at 141.

A straightforward application of *Tarka* in the present case yields the same result: Licensee initially appealed PennDOT's suspension of his license and prevailed before the trial court. PennDOT successfully appealed and obtained a remand order that directed the trial court to reconsider its decision. Licensee, having initially appealed his license suspension, was again the appellant and moving party, with the burden of moving his case forward.

For the foregoing reasons, I would reverse the order of the trial court's conclusion that the delay should be chargeable to PennDOT.

Judge LEADBETTER and Judge COHN JUBELIRER join in the dissent.