**PennDOT v. Dyer**

270

*Joanne Faul,* for PennDOT.
*Kenneth E. Picardi,* for defendant.

SMYTH, *J.,* February 1, 2009—

## INTRODUCTION

The Commonwealth of Pennsylvania Department of Transportation (PennDOT) has appealed to the Commonwealth Court of Pennsylvania from our order after hearing sustaining Bambi Dyer's appeal under the Judicial Code, 42 Pa.C.S. §933(a)(1)(ii), and the Vehicle Code, 75 Pa.C.S. §1550, and rescinding PennDOT's suspension of her driver's license under 75 Pa.C.S. §1547(b)(1)(i) (providing for suspension of operating privileges for one year upon refusal of a person under arrest for driving under the influence to submit to chemical testing). The issue decided, as framed by counsel at the hearing and considered by this lower court, concerned whether PennDOT's unreasonable delay in giving notice of the suspension prejudiced Dyer. For the reasons that follow we respectfully suggest our order should be affirmed.

## FACTS/PROCEDURAL HISTORY

The following facts are taken partly from a procedural chronology handed up to the bench at the hearing by counsel for PennDOT, as modified by counsel in open court. (Hr'g appeal license suspension at 2-10.) Counsel for PennDOT offered no witnesses at the hearing and never formally moved for admission into evidence of the chronology, or another packet of exhibits she offered (*id.* at 2, 15-16) consisting of Ms. Dyer's driving record sealed and certified by PennDOT and court records in this case. Nor did the parties formally stipulate to the chronology of events. However, PennDOT's counsel's representations to the court of relevant procedural facts are judicial admissions and any challenge to our reliance

on them is waived. To the extent the chronology is reflected in the public records of this court or PennDOT, we may judicially notice them. See Pa.R.E. 201 (relating to judicial notice of adjudicative facts); cf. 75 Pa.C.S. §1550(d) (relating to admissibility of documentation on judicial review of driver's license appeals); Pa.R.E. 901(b)(7) (relating to authentication of public records or reports); Pa.R.E. 902 (relating to self-authentication of documents and records); Pa.R.E. 1005 (relating to contents of public records); *Terraciano v. PennDOT,* 562 Pa. 60, 64-65, 753 A.2d 233, 235 (2000) (noting Commonwealth Court had earlier held in that case that the trial court had erred in finding PennDOT was required to produce independent verification of a licensee's certified driving record). Citations in parentheses in the following chronology are from the court's official record in the instant case (the 2005 petition). The procedural facts bearing on the determination of the matter, however, begin at an earlier term and number (the 1999 petition).

Ms. Dyer was arrested for driving under the influence December 31, 1998. She, according to PennDOT, refused chemical testing at that time. The facts surrounding the refusal remain in dispute and have never been judicially determined. In the 1999 petition, Ms. Dyer pled that she, a resident of Montgomery County, Pennsylvania, petition for appeal from order of Department of Transportation suspending driver's license para. 1, *PennDOT v. Dyer,* no. 99-13870 (Pa. C.P. Montg. Cty. Dec. 26, 2001), was arrested by an officer of the East Coventry Township Police Department, Chester County, Pennsylvania. *Id.* para. 2. She maintains the arrest was illegal, and that she never received the required warnings (of 75 Pa.C.S.

§1547(b)(2)) nor refused a chemical test of her blood, breath, or urine as alleged (Pet. appeal order suspending driver's license para. 4(c)).

In any event, on July 23, 1999, PennDOT sent Dyer notice of a one-year suspension for refusal (under 75 Pa.C.S. §1547(b)). (The chronology submitted by PennDOT gave the date of the notice as June 23, 1999. At the hearing, Ms. Dyer's counsel, without objection, pointed out the correct date was *July* 23. (Hr'g appeal license suspension at 2.) The July date is borne out in PennDOT's certified record. (Exhibit C-1 no. 11.) Ms. Dyer's counsel maintained at the hearing, as the 2005 petition alleged, that the arresting officer waited seven months after the arrest until Ms. Dyer was found not guilty of the underlying offense to file the form indicating a refusal in retaliation for the acquittal. (Hr'g appeal license suspension at 7-8 (stating the officer filed the form the day Dyer was found not guilty at a trial in Chester County at which the refusal was not mentioned); Pet. appeal order suspending driver's license para. 4(b) (arguing filing notice of alleged refusal after acquittal of driving under the influence violated double jeopardy).) This court did not at the hearing take evidence on the facts surrounding the underlying arrest and alleged refusal. (Hr'g appeal license suspension at 10-14, 18-22, 24.)

Returning to the original July 1999 notice of suspension, within the 30 days allowed by the Judicial Code, 42 Pa.C.S. §5571(b), on August 5, 1999, Ms. Dyer appealed the notice to the Court of Common Pleas of *Montgomery* County. The petition for appeal in the record of the 1999 case is accompanied by an order endorsed under Pa.R.C.P. 1025 by petitioner's counsel, dated and

signed by the court administrator August 5, 1999, and filed August 6, 1999, fixing a hearing de novo on the suspension for September 27, 1999, at 10 a.m. in Courtroom 7 of the Montgomery County Courthouse, and providing, "[T]he prothonotary shall notify the department forthwith." Prelim. order para. 1; cf. Pa.R.C.P. 236(a)(2) (requiring the prothonotary immediately to give written notice of any order to each party together with a copy of the order). The "preliminary order" further provided, "petitioner's timely service of a copy of his [sic] petition for appeal upon the Department of Transportation shall result in said suspension being stayed pending a final decision by this court." Prelim. order para. 2; cf. 75 Pa.C.S. §1550(b)(1) (providing for such supersedeas). The record also contains petitioner's counsel's sworn statement that he served a copy of the petition on PennDOT's Office of Chief Counsel by certified mail August 5, 1999, and that the mail was received there August 9, 1999. Certification serv. at 1; cf. 75 Pa.C.S. §1550(a) (requiring such service). The next entry on the docket of the 1999 case is an order by the undersigned dated the day scheduled for the hearing, September 27, 1999, stating the matter was continued indefinitely, "to be relisted upon further application of counsel/petitioner." License suspension order no hr'g held ll. 1-3. Beneath the signature line of the order, two boxes are checked for carbon copies hand-delivered and mailed to the Commonwealth; the boxes for petitioner are not checked. *Id.* f. Of course, this court has no independent recollection of what transpired the day scheduled for hearing of the 1999 appeal, the reason(s) for the continuance, or who did or did not appear; nor have the parties offered much insight into these questions.

However, December 26, 2001, the court terminated the appeal for inactivity. Cf. Pa.R.J.A. 1901 (providing for termination of matters by a tribunal for unreasonable inactivity). On December 14, 2002, the court removed the (1999) appeal from active files.

On February 4, 2005, PennDOT sent four notices of suspension to Dyer, for (1) the refusal December 31, 1998; (2) conviction February 22, 2000, for leaving the scene of accident December 14, 1999; (3) conviction August 13, 2003, for careless driving June 23, 2003; and (4) conviction January 9, 2004, for improper passing December 2, 2003. At the hearing on the present petition, that is, the appeal of these four suspensions, PennDOT's counsel offered to withdraw the latter three notices as issued in error because petitioner wasn't under suspension at the relevant time(s). (Hr'g appeal license suspension at 3-4.) However, counsel stated, "[W]e want to deal with that technically [administratively]." (*Id.* at 4.) Therefore, only the suspension for the alleged refusal December 31, 1998, is at issue in the instant appeal, and the court has not considered the other three notices further, except as they may bear on Ms. Dyer's later testimony on prejudice.

Both parties agree PennDOT is responsible for the period of delay between termination of the 1999 appeal December 26, 2001, and PennDOT's notice of suspension of February 4, 2005, based on the same incident. (See hr'g appeal license suspension at 4-5.) As PennDOT's counsel conceded, "I'm willing to accept the responsibility for that three years, two months. And if there was prejudice suffered by the petitioner during that course of time, then that's on PennDOT, and we would lose this appeal." (*Id.* at 5.) Thus, the issue put to the

court for resolution, as framed by the parties at the hearing, was whether Dyer suffered prejudice as a result of that delay.

On February 25, 2005, Ms. Dyer's counsel filed appeal in *Chester County* of the February 4, 2005 notices. As in the 1999 case, counsel supplied, along with the petition for appeal, a "preliminary order," endorsed by him under Pa.R.C.P. 1025, to schedule a hearing de novo. The order, signed by the Chester County Court of Common Pleas per curiam, dated and filed February 25, 2005, scheduled a hearing for May 5, 2005, at the Chester County Courthouse, and, as with the scheduling order in the 1999 appeal, provided for the prothonotary to notify the department forthwith. (Prelim. order para. 1.) Also as in the 1999 appeal, the "preliminary order" provided that timely service of a copy of the petition for appeal on the department would result in the suspension being stayed pending final decision. (*Id.* para. 2.) The certified Chester County record reflects a certificate of service of the petition upon the department by certified mail February 25, 2005 (Civil Ct. management system case summ. report at 1) and receipt by PennDOT February 28, 2005. (Certification serv. at 1 and exhibit B.)

The record next reflects a May 5, 2005 transfer order from Chester County to Montgomery County "within 30 days." The parties did not, at the hearing, enlighten this court as to the circumstances surrounding the transfer. They are crucial, however, in that PennDOT now raises an argument on appeal, not previously raised, that the handling of the transfer somehow divested this court of jurisdiction of this appeal. (Am. statement errors complained appeal para. 1.)

The record actually certified from Chester County shows that the transfer order was "by agreement of the parties." (Agreed order ll. 1-2.) This "agreed order" was prepared under PennDOT's attorney's endorsement. See Pa.R.C.P. 1025 ("Every pleading or other legal paper of a party represented by an attorney shall be endorsed with the name of the attorney, [together] with an address where pleadings and other legal papers may be served in the manner provided by Rule 440(a) and a telephone number."). It provided that the petitioner (Dyer), within 30 days of the order, shall "file all documents and pay any fees and costs necessary to effectuate this transfer and take such action necessary to ensure that this petition is promptly listed for hearing before the Court of Common Pleas of Montgomery County." (*Id.* ll. 4-7.) It further provided that should the petitioner fail to act within the requisite time and provide proof in writing to the Department of Transportation or otherwise fail to comply with the order the suspension is reinstated. (*Id.* ll. 7-10.) Attached to the "agreed order" in our certified record is a sheet bearing the seal of the Chester County Prothonotary and signed by him and the "transfer clerk" attesting the original file was transferred and sent by DHL Express to the Court of Common Pleas of Montgomery County on May 13, 2005. (Ct. Common Pleas Chester County Office Proth'y passim.) The first page of the record certified from Chester County also bears the sealed attestation of the Chester County Deputy Prothonotary setting forth the same date. (Civil Ct. management system case summ. report at 1.)

Thereafter, according to PennDOT, June 29, 2005, the action was filed in Montgomery County, but did not get a hearing date, and did not serve PennDOT with a new

docket number. (This is PennDOT's allegation, although it does not make literal sense.)

March 3, 2008, the first hearing date was assigned, but the case was continued for failure to make service on PennDOT. (Again, this is PennDOT's bald assertion, which Dyer's counsel did not per se contest, but it does not entirely square with items in the official record of this case. The record contains an order stamped with the signature of the court administrator dated December 20, 2007, fixing the hearing de novo for March 3, 2008, and stating, "It is the petitioner's responsibility to notify the Commonwealth of Pennsylvania of this hearing.") (Order para. 3.) However, at the bottom of the order is a typed notation indicating a courtesy copy sent to Michelle A. Fioravanti, Esquire. The directory of the Pennsylvania Bar Association, Pa. Bar Ass'n. Lawyers Directory & Product Guide 633 (2008), lists her as an attorney at the same Montgomery County address and phone number appearing on PennDOT's counsel's endorsement of the "agreed order" of transfer from Chester County, also the same address shown on this court's official docket (and the Commonwealth Court's) as that of PennDOT (Montg. Cty. Pa. Pls. col 2; Commw. docket sheet Commw. Ct. Pa. at 1). The court administrator's order of December 20, 2007, is marked as received by the prothonotary and filed February 26, 2008. However, there is no notation on the docket that the prothonotary gave the parties immediate written notice of entry of the order or sent them a copy of the order as required by Pa.R.C.P. 236. PennDOT's counsel, including counsel who eventually appeared at our hearing and filed the appellate papers, Joanne Faul, Esquire, never filed a formal written entry of appearance in our court as required by local rule,

Montg. Cty. C.C.R. 1012*. Therefore, no counsel for PennDOT is shown on this court's official docket. (Montg. Cty. Pa. Pls. col. 4.) In a nutshell, the record is far from clear that PennDOT's assertions are correct either that it was not notified of the March 3 hearing or that this particular delay was attributable to petitioner.)

By order of March 3, 2008, the court continued the matter to June 30, 2008. (License suspension order no hr'g held para. 2.) The March 3 proceeding was before a different judge of this court, and again the order that judge signed gives no reason for the continuance such as would support the assertion of lack of service. Cf. Pa.R.C.P. 216 (grounds for continuance). The order also reflects it was mailed the same day to petitioner's counsel and Joanne Faul, PennDOT's current counsel, although she had identified herself on no other paper filed in this court prior to that order.

The hearing of June 30, 2008, established the undersigned's first contact with this case since continuing the hearing of the 1999 appeal on September 27, 1999. At hearing, counsel for the parties argued legal issues as to delay, prejudice to petitioner from the delay, and whether the arrest and refusal were properly then before the court, and petitioner testified briefly as to her activities during the relevant period. As stated, Ms. Faul, counsel for PennDOT, offered no testimony and formally moved for the admission of no evidence at the hearing, although she did hand up the shaky "chronology" referred to and petitioner's certified driving record from PennDOT.

In reciting her "chronology," PennDOT's counsel, relying on *PennDOT v. Gombocz,* 589 Pa. 404, 407, 909 A.2d 798, 800-801 (2006) ("The standard for sustaining an appeal based on delay requires a defendant to show:

'(1) an unreasonable delay chargeable to PennDOT led the licensee to believe that [her] operating privileges would not be impaired; and (2) prejudice would result by having the operating privileges suspended after such delay.'" (quoting *Terraciano,* 562 Pa. at 66, 753 A.2d at 236)), argued that the two windows of time represented by the two years up until the 1999 appeal was terminated in 2001 (hr'g appeal license suspension at 2-4) and the time between the filing of the 2005 appeal and the hearing (*id.* at 5, 7) were attributable to petitioner, but admitted PennDOT was responsible for the delay from December 26, 2001, when the 1999 appeal was terminated, until February 2005 when the notice of suspension was sent (hr'g appeal license suspension at 2-3, 4-5; see *id.* at 5 ("I'm willing to accept the responsibility for that three years, two months. And if there was prejudice suffered by the petitioner during that course of time, then that's on PennDOT, and we would lose this appeal."); cf. *id.* at 16 (applying the *Gombocz* criteria)). Petitioner's counsel sought to attribute to the Commonwealth also the seven-month delay between the arrest of December 31, 1998, and the first notice of suspension, filed to retaliate, he said, for Dyer's acquittal in Chester County. (*Id.* at 7-8.) As for the delay in the 1999 appeal, he argued it was promptly scheduled for a hearing and continued for reasons unclear. (*Id.* at 8-9.) He claimed he was unaware until recently it was his obligation to move the case forward, and that when he filed the (1999) appeal he didn't ask for a hearing, the hearing was scheduled. When it was scheduled and then continued, "[W]e simply waited. My client had a valid driver's license [and] we didn't think it was incumbent upon us to do anything. She's also of somewhat limited financial means and the

delay just sort of perpetuated. If some of that is attributable to us, I have no further argument." (*Id.* at 9.) Petitioner's counsel also argued the hearing was also about the alleged refusal because the issue had never been adjudicated and the notice scheduling the proceeding stated it was a de novo hearing. (*Id.* at 5-6, 18-19.) Counsel for PennDOT argued the right to contest the refusal was lost when petitioner failed to respond to the notice of termination of the 1999 appeal for inactivity and go forward with the case as required by *Gombocz.* (Hr'g appeal license suspension at 19-22.) Petitioner's counsel responded a termination for inactivity was not an adjudication. (*Id.* at 21.) He also observed that the Commonwealth was not prepared with evidence or exhibits or witnesses bearing on the refusal. (*Id.* at 6.) Ms. Faul indicated if petitioner's counsel wanted to go forward on the issue she could come back with the officers for the "refusal hearing." (*Id.* at 16.) Her position, though, was that termination of the initial appeal should have resolved the issue, and the hearing was simply about delay. *(Id.)*

The parties' viewpoints on the various periods of delay and whether the original refusal was still at issue having been crystallized, more or less, in this fashion, their respective cases on prejudice were as follows. Petitioner's counsel prefaced his client's testimony this way:

"[T]he appeal was terminated for inactivity in 2001. My client believed, though, that there would be no further attempt to suspend her driver's license. When it expired in 2003, they re-issued her driver's license. I have a photocopy of her driver's license. I'm sure PennDOT's records will indicate that. Again, in 2003, they re-issued her driver's license and it was continued—it was good for another four years until August of 2007. So, again,

after a three-and-a-half-year delay, PennDOT issues these four notices. . . . I can put my client on to briefly . . . explain the prejudice in that three-year period." (*Id.* at 9-10.)

Ms. Dyer testified she had been living in Royersford (Montgomery County) in 1999 and moved to Chester County in 2000 or 2001. (*Id.* at 10.) During the period between 1999 and 2005 she was in nursing school for her RN and working full-time. (*Id.*) She believed it was important to further her education (*id.* at 10-11) and in 2002 and 2003 she took classes at Montgomery County Community College studying prerequisites for the RN program like microbiology, biology, and others. (*Id.* at 11.) She needed her driver's license to get to and from the classroom and to work. (*Id.*) More recently she enrolled in the same course of study at a different institution, the Center for Arts and Technology in Coatesville (Chester County), closer to home but still maybe 20 or 25 miles away. (*Id.* at 11.) She was presently enrolled there and on the honor roll, expecting to graduate in December (2008), and would be looking for a job in the immediate area. (*Id.* at 12.)

Her counsel then showed to PennDOT's counsel and presented to the court (again, without formally moving their admission) a copy of Ms. Dyer's transcript and a letter indicating she was on the honor society. (See *id.* at 12.) At this point counsel elicited positive responses from Ms. Dyer that she had started her course of study in 2001 and continued to do it and would graduate soon. (*Id.* at 12.)

In 2003 when she went to reapply for her license PennDOT gave her a new driver's license. (*Id.* at 12-13.) She had a fender-bender, and a citation for improper

passing in 2004. (*Id.* at 13.) When she got those violations, PennDOT sent her no notice of any points or suspension and she believed that her license at that point in time was intact. (*Id.* at 13.)

On cross-examination, Ms. Dyer testified that the police told her she would get points and she was aware she had points on her record, but she didn't get letters from PennDOT about it, because it wasn't enough for PennDOT to notify her, she didn't think. (*Id.* at 13-14.) With that, the cross-examination and testimony concluded.

Counsel made closing arguments focusing on the issue of prejudice during the period of delay from 2001 to 2005, for which, the parties agreed, PennDOT was responsible. (*Id.* at 15-18.) They also revisited whether the issue of refusal remained open or had died with the terminated appeal. (*Id.* at 18-22.) Counsel then raised another issue, prejudice to Dyer from her license not having been renewed again in August 2007. (*Id.* at 23.) Ms. Faul framed that issue as one of credit that had to be taken up directly through a hearing in Harrisburg and that was not before the court. (*Id.* at 23-24.) At that the court took the matter under advisement, without taking evidence on the issues of the alleged refusal of 1998 or the belatedly raised unrenewed license of 2007. (See *id.* at 24.)

The court solicited brief letter memos from the parties addressing the issues of prejudice sustained by Ms. Dyer as a result of the delay from December 26, 2001, through February 4, 2005. (Letter from Smyth, J., to Picardi and Faul of 7/2/08, para. 1.) In the meantime, petitioner's counsel wrote the court enclosing the three documents he had presented but asked for back at the end of the

hearing because he did not have copies. (Letter from Picardi to Smyth, J., of 7/1/08, ll. 2-4.)

Petitioner submitted a letter brief to the court July 28, 2008, and PennDOT's responsive brief was received August 11. However, neither party filed briefs with the prothonotary, and they are not of record. In discussing the issues on this appeal, the court will rely on the facts as presented at the hearing and not as portrayed in the parties' briefs. The court may consider the legal arguments made in the briefs for their persuasive value, but in framing the issues preserved for appeal the court will restrict itself to those properly raised at the hearing and in PennDOT's statement of matters complained of on appeal under Pa.R.A.P. 1925.

One further point about the briefs needs mentioning. PennDOT complains on appeal, among other things, that the court improperly relied on the exhibits attached to petitioner's brief, specifically copies of her driver's license issued in 2003 and her school transcript, which were items submitted to the court at the hearing but returned to petitioner's counsel. We will discuss this complaint in connection with the appropriate issue.

On August 18, 2008, upon consideration of the evidence, testimony, and arguments, we ordered that petitioner's appeal be sustained and the suspension rescinded. (Montg. Cty. Pa. dockets seq. 3.) On September 15, 2008, PennDOT filed notice of appeal to the Commonwealth Court (*id.* seq. 6) together with a statement of errors complained of on appeal (*id.* seq. 4). The notice included a request for transcript and an affidavit of service on the court reporter under Pa.R.A.P. 906(a)(3) (though not on the court administrator under Pa.R.A.P. 906(a)(4)). However, the undersigned had previously

already signed a certificate dated August 14, 2008, that the transcript was received and directed to be filed. (Hr'g appeal license suspension at 25.) For unknown reasons, the transcript was not actually filed of record with the prothonotary until January 6, 2009. (Montg. Cty. Pa. dockets seq. 12.)

## ISSUES PRESENTED ON APPEAL

On September 26, 2008, PennDOT on its own volition filed an amended statement of errors complained of on appeal (*id.* seq. 10) with service on the undersigned September 29, 2008. (*Id.* seq. 11.) The amended statement raised the following four issues: (1) "The trial court lacked jurisdiction to hear petitioner's appeal as the appeal was filed in the Common Pleas Court of Montgomery County more than [30] days after the notice of petitioner's suspension, and beyond the [40] days allowed for transfer by the Court of Common Pleas of Chester County." (Am. statement errors complained appeal para. 1) (citing 42 Pa.C.S. §5571(b).) (2) "The trial court erred in finding that petitioner was prejudiced by a three-year delay in suspension by PennDOT when petitioner was responsible for inexcusable delay of [five] years in pursuing the appeal of the suspension." (*Id.* para. 2) (3) "The trial court erred in finding that appellee, Dyer, was prejudiced by a three-year delay in suspension by PennDOT from December 26, 2001[,] until February 4, 2005, where Dyer produced no evidence at trial to support any change in her circumstances during that time period." (*Id.* para. 3) (citing *Orloff v. Commonwealth*, 912 A.2d 918 (Pa. Commw. 2006) (en banc)).) (4) "The trial court erred in relying on documents produced by appellee, Dyer, which were never offered into evidence,

but were attached as exhibits to a post-trial brief." (*Id.* para. 4) (citing *PennDOT v. Soder,* 110 Pa. Commw. 492, 494 n.1, 532 A.2d 948, 949 n.1 (1987).) ("The appellee attached to his brief a copy of an order purportedly adjudicating him as bankrupt. That order does not appear in the record certified to this court and, hence, is not before us in evidence. See Pa.R.A.P. 1921."). The statement requested the opportunity to argue in the appellate brief any other issue raised in the court's opinion. (*Id.* para. 5.)

## DISCUSSION

### 1. Did the Court Have "Jurisdiction" of This Appeal?

PennDOT's first argument, apparently that we were divested of jurisdiction of this appeal by the failure of the record to be lodged in this court within either 30 or 40 days of the order transferring the case from Chester County, is both perplexing and specious. PennDOT never raised this issue before filing the statement of matters complained of on appeal, making the issue doubly difficult to decipher or address. Ordinarily issues not raised in the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). The statement of matters complained of on appeal under Pa.R.A.P. 1925 is not a vehicle by which issues not previously asserted may be raised for the first time; the statement is merely a tool for advising the trial court of the *previously preserved* issues the appellant will advance on appeal so the trial court may determine if it needs to write an opinion and for directing the trial court to the issues for which an opinion is needed. *Glenbrook Leasing Co. v. Beausang,* 839 A.2d 437, 444 (Pa. Super. 2003), *aff'd,*

584 Pa. 129, 870 A.2d 318 (2005). Of course, PennDOT, by dressing its first argument in the jurisdictional garb of the timeliness of the license-suspension appeal, seeks to avoid the bar of waiver. See *Commonwealth v. Bower,* 48 Pa. Commw. 379, 380, 410 A.2d 91, 92 (1980) (holding the timeliness of an appeal goes to the subject-matter jurisdiction of the court and may therefore be raised at any time, even on the appellate level, either by the parties or by the court on its own motion). However, there is simply no legal basis for PennDOT's claim that the timing of the filing of the transferred record in this court somehow deprived the court of jurisdiction to hear the appeal.

Appeals from determinations of the Department of Transportation suspending drivers' licenses are granted as of right by section 1550 of the Vehicle Code, 75 Pa.C.S. §1550. Jurisdiction of such appeals lies in the courts of common pleas under section 933 of the Judicial Code, 42 Pa.C.S. §933(a)(1)(ii), and an appeal must be made within 30 days of the mailing of the department's notice, 42 Pa.C.S. §§5571(b), 5572. If a licensee fails to appeal from a license suspension within the statutorily mandated 30-day period, the trial court is without jurisdiction. *Henning v. PennDOT,* 687 A.2d 20, 21 (Pa. Commw. 1996).

PennDOT acknowledges Dyer filed her appeal of PennDOT's February 4, 2005, notice(s) of suspension February 25, 2005, within the 30-day jurisdictional window. PennDOT's argument that the appeal was "untimely" focuses on procedural events surrounding transfer of the appeal that transpired *after* its timely filing.

Dyer filed the appeal in the Chester County Court of Common Pleas. As PennDOT does not dispute that the

original arrest, prosecution, and alleged refusal to submit to testing occurred in Chester County, cf. petition for appeal from order of Department of Transportation suspending driver's license para. 2, *PennDOT. v. Dyer,* no. 99-13870 (Pa. C.P. Montg. Cty. Dec. 26, 2001) (alleging Dyer was arrested by an officer of the East Coventry Township Police Department, Chester County, Pennsylvania), venue for the 2005 petition was properly laid in Chester County. See 42 Pa.C.S. §933(a)(1)(ii) (" [V]enue shall be in . . . the county where the arrest . . . was made in appeals involving the suspension of operating privileges" under 75 Pa.C.S. §1547 (relating to chemical testing to determine amount of alcohol or controlled substance) . . . .); *Gombocz,* 589 Pa. at 405 and n.3, 909 A.2d 799 and n.3. Simultaneously with filing the appeal Dyer's counsel proved service on PennDOT (certification serv. at 1 and exhibit B) and submitted and obtained an order of the Court of Common Pleas of Chester County scheduling a hearing on the petition for May 5, 2005 and directing the Chester County Prothonotary to notify PennDOT forthwith. (Prelim. order para. 1.) This procedure was in accordance with the statute providing for judicial review of PennDOT notices of suspension of drivers' licenses. 75 Pa.C.S. §1550(c) ("The court shall set the matter for hearing upon [60] days' written notice to the department . . . .").

However, the hearing properly scheduled in Chester County on Dyer's appeal for May 5, 2005, did not take place. Instead, for reasons that do not appear of record, the Chester County Court that day entered the "agreed order," prepared under PennDOT's counsel's endorsement under Pa.R.C.P. 1025, transferring the matter to Montgomery County. This "agreed order" contained ad-

ditional provisions upon which PennDOT apparently relies for its "jurisdictional" argument. Thus, the order provided, basically, that within 30 days the petitioner (Dyer) was to take all actions necessary to ensure that the petition was promptly listed in Montgomery County and otherwise comply with the transfer order or the suspension "is [sic] [reinstated]." (Agreed order 11. 4-10.)

Thereafter the Chester County Court certified transfer of the matter to our court May 13, 2005, by express courier, and the record was lodged in this court June 29, 2005—more than 30 days after the "agreed order" or the transfer. (The filing of the record was also more than 40 days after the transfer; however, as we have been directed to no statute or rule that contains a 40-day limitation for transfers, and the transfer order itself does not impose one, we will not speculate as to the provenance of PennDOT's "40-day" jurisdictional argument. Cf. Pa.R.C.P. 1006 (providing generally for venue and change of venue for improper venue, forum non conveniens, or inability to receive fair and impartial trial; no time limitation is stated for transferring the record after an order of transfer is entered).)

There are several glaring flaws with PennDOT's argument that the failure of the transferred record to be "filed" in our court within 30 days somehow divested us of jurisdiction. First and foremost, the date a transferred appeal is received in the transferee court does not establish the date of the appeal's filing for jurisdictional purposes. For license-suspension appeals that date is the date the appeal is filed, which must be within 30 days of the mailing date of PennDOT's notice of suspension. 42 Pa.C.S. §§5571(b), 5572.

Second, jurisdiction in a transferred matter attaches at the time the action is filed in the transferor court, not the time the transferee court receives the transferred record. Although venue-based transfers do not, strictly speaking, even implicate the respective courts' "jurisdiction" over the subject matter, the rules governing transfer based on lack of jurisdiction are instructive. The Pennsylvania Rules of Civil Procedure, Pa.R.C.P. 1032, provide, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter . . . the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction . . . but if that is not possible, then it shall dismiss the action." Pa.R.C.P. 1032(b) and note (citing Judicial Code, 42 Pa.C.S. §5103 (relating to transfer of erroneously filed matters)); cf. Pa.R.A.P. 751 and note (governing transfer of erroneously filed appellate matters). The Judicial Code, in turn, provides,

"If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, *where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth.*" 42 Pa.C.S. §5103(a) (emphasis added); *accord* Pa.R.A.P. 751 (*"[T]he [transferred] appeal or other matter shall be treated as if originally filed in transferee court on the date first filed in a court or magisterial district."* (emphasis added)). Thus, when the Chester County Court

transferred Dyer's appeal to us, we were to treat the matter as if originally filed on the date the appeal was filed in Chester County, February 25, 2005. That date established the timeliness of the appeal as filed within 30 days of the notices of suspension of February 4, 2005. 42 Pa.C.S. §5571(b). The transfer of the case—for whatever reason—had no bearing on the timeliness of the appeal for purposes of our jurisdiction.

Third, the 30-day period contained within the "agreed order" itself is vague as to what "the petitioner" (Dyer) was to have accomplished within 30 days of the order. The order's exact words were that, within 30 days of the order, Dyer was to: "file all documents and pay any fees and costs necessary to effectuate this transfer and take such action necessary to ensure that this petition is promptly listed for hearing before the Court of Common Pleas of Montgomery County." (*Id.* ll. 4-7.) Apparently whatever was needed to be done to "effectuate" the transfer was done within 30 days, because the Chester County Prothonotary certified that the transfer was complete on May 13, 2005, eight days after the order. Whether Dyer "took such action necessary to ensure that this petition is promptly listed for hearing before the Court of Common Pleas of Montgomery County" is certainly questionable; however, whether or not she took such action is wholly irrelevant to the date the record was "filed" in Montgomery County, June 29, 2005. The Chester County Prothonotary certified that the record was sent to Montgomery County by DHL Express May 13, 2005; what was Dyer to have done, tracked the package until it was stamped and filed by the Montgomery County Prothonotary? The record contains no clues as to why it was sent from Chester County by courier May

13, 2005, yet was not recorded as filed in the neighboring County of Montgomery until June 29. This mystery, however, simply cannot serve as a basis for questioning our jurisdiction over the appeal. Furthermore, the provision of the "agreed order" that Dyer's failure to do whatever she needed to do within 30 days meant the suspension "is" reinstated, whatever that means, is not self-executing. PennDOT's counsel cannot have the audacity to suggest, after participating in the hearing on the suspension before the undersigned June 30, 2008, without mentioning the issue, that the suspension "was" reinstated once the record was not received by this court within 30 (40?) days of the transfer order. Finally, any vagueness in the order and in what it commanded Dyer to do is attributable to PennDOT, who at least "agreed" with Dyer to the order and evidently prepared it under PennDOT's own counsel's imprimatur. The fact the parties presented the "agreed order" to the Chester County Court for signature is of no moment; it is well settled the parties cannot confer subject matter jurisdiction on a court or tribunal by agreement or stipulation, *Mastrocola v. SEPTA,* 941 A.2d 81, 88 (Pa. Commw. 2008), nor can one court or tribunal confer jurisdiction on or withhold it from another court or tribunal in contravention of law or statute.

PennDOT's quizzical and belatedly raised argument that we lack jurisdiction over this appeal is spurious. We now turn to the other issues raised.

### 2. Can Licensee Be Prejudiced by PennDOT's Delay When She Caused "Inexcusable" Delay?

PennDOT claims this court erred in finding Dyer was prejudiced by PennDOT's delay in sending out notice of

suspension when Dyer herself caused a greater period of delay in this case.

At the outset, we observe again that this was not the way the case was presented to us at the hearing; we were not asked to compare and weigh the parties' respective periods of delay in the case to determine which party was more culpable in the overall delay; nor were we presented with any authority to show that such is the proper standard to apply to a license-suspension appeal involving delay. Rather, both parties asked us to attribute to PennDOT the specific period from December 26, 2001, when Dyer's original appeal was terminated for inactivity, and February 4, 2005, when PennDOT reissued notice of suspension, and determine whether Dyer incurred prejudice due to the delay during that discrete period. PennDOT conceded that if such prejudice were suffered during that period, the court would be justified in lifting the suspension. (Hr'g appeal license suspension at 5 ("I'm willing to accept the responsibility for that three years, two months. And if there was prejudice suffered by the petitioner during that course of time, then that's on PennDOT, and we would lose this appeal.").) For PennDOT now to claim that we must balance the prejudice suffered during that three years, two months (conveniently shortened to three years in PennDOT's statement of matters complained of) against five years of "inexcusable" delay on Dyer's part is to change horses in midstream and inject a new issue into the case. Issues not preserved in the trial court and raised for the first time on appeal are waived, Pa.R.A.P. 302, and we respectfully suggest the Commonwealth Court should find PennDOT's new "balancing" theory raised in the Pa.R.A.P. 1925 statement waived. See *Estate of Cusat,*

470 Pa. 418, 419 n.2, 368 A.2d 698, 699 n.2 (1977) (per curiam) (finding issue of admission of witness' testimony not preserved for appellate review where appellant's objection to the testimony at hearing was based on a different ground from that argued on appeal); *Commonwealth v. Polof,* 238 Pa. Super. 565, 571-72 and n.4, 362 A.2d 427, 430-31 and n.4 (1976) (holding both the theory as well as the grounds must be raised below if an issue is to be preserved for appellate review; one may not merely preserve the "grounds" at trial level and, for the first time on appeal, raise "theories" to support them); see also, *Beausang,* 839 A.2d at 444 (holding statement of matters complained of on appeal is not a vehicle by which issues not previously asserted may be raised for the first time). Moreover, this court has not found facts to support PennDOT's present assertion that PennDOT was responsible for only three years of delay while Dyer was responsible for five years of "inexcusable" delay.

The Supreme Court of Pennsylvania has set forth the standards we are to use in considering a licensee's appeal of a delayed suspension of operating privileges:

"In order to sustain an appeal of a license suspension based on delay, the licensee must prove that: (1) an unreasonable delay chargeable to PennDOT led the licensee to believe that her operating privileges would not be impaired; and (2) prejudice would result by having the operating privileges suspended after such delay." *Terraciano v. PennDOT,* 562 Pa. 60, 66, 753 A.2d 233, 236 (2000) (unanimous opinion). "[The appellate court's] scope of review of a decision in a license suspension case is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse

of discretion in reaching its decision." *Id.* at 65-66, 753 A.2d at 236. "When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused." *Commonwealth v. Eichinger,* 591 Pa. 1, 31, 915 A.2d 1122, 1140, *cert. denied,* 128 S.Ct. 211 (2007).

"It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. . . . An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will. . . . Absent an abuse of that discretion, we will not disturb the ruling of the trial court." *Id.* (citations omitted)

In a license-suspension matter,

"What constitutes an unreasonable delay will depend upon the circumstances of each individual case. . . . Administrative delay may be held against PennDOT for purposes of determining whether there was an unreasonable delay. . . . Therefore, it is PennDOT's burden to prove that the delay was caused by some factor other than mere administrative inaction. . . . When PennDOT fails to take responsibility for moving a case forward under circumstances where it is reasonable for it to be expected to do so, the delay is attributable to PennDOT." *Terraciano,* 562 Pa. at 66, 753 A.2d at 236. (footnote omitted) (citations omitted)

As an example of a case involving an unreasonable administrative delay in reinstating a suspension *Terraciano* cited, among other cases, *Fisher v. Commonwealth,*

682 A.2d 1353 (Pa. Commw. 1996), in which the Commonwealth Court found unreasonable PennDOT's three-and-one-half-year delay in reinstating notice of suspension after the licensee filed an untimely appeal that was later terminated for inactivity. 562 Pa. at 66 n.7, 753 A.2d at 236 n.7. *Terraciano* also cited prominently in the above discussion *Lancos v. PennDOT,* 689 A.2d 342 (Pa. Commw. 1997), in which the Commonwealth Court held unreasonable PennDOT's admitted and unexplained administrative delay of 20 months in reinstating a suspension after the Commonwealth Court's affirmance on PennDOT's appeal of an order modifying the suspension where PennDOT had restored the licensee's operating privileges in the meantime and he had changed his position in reliance. See also, *Bennett v. PennDOT,* 163 Pa. Commw. 664, 642 A.2d 1139 (1994) (reversing dismissal of licensee's appeal where PennDOT unreasonably delayed eight months after conviction to send notice of suspension and meanwhile licensee took a job as a truck driver in reasonable reliance on his belief his operating privileges would not be further impaired), *appeal dismissed as improvidently granted,* 543 Pa. 623, 673 A.2d 921 (1996), cited in *Terraciano,* 562 Pa. at 66 n.7, 753 A.2d at 236 n.7.

Applying these standards to the period between December 26, 2001, and February 4, 2005, we find that it is with good reason that PennDOT conceded this delay was both unreasonable and attributable to PennDOT. When Dyer's 1999 appeal was terminated for inactivity on the former date, the automatic supersedeas of 75 Pa.C.S. §1550(b)(1) no longer existed, and nothing prevented PennDOT from that date forward from proceeding with the suspension. Cf. *Fisher v. PennDOT,* 682

A.2d 1353, 1355-56 (Pa. Commw. 1996) (holding PennDOT responsible for unreasonable three-and-a-half-year delay between filing of untimely appeal and notice of suspension where supersedeas was not in effect to prevent PennDOT from proceeding with suspension during that period). Instead of doing so, PennDOT waited till the latter date, almost three years and two months later, to reinstate the suspension. Meanwhile, in 2003, in the middle of the period of delay, PennDOT renewed Ms. Dyer's license. PennDOT had the burden to prove that this period of delay was caused by some factor other than mere administrative inaction, *Terraciano*, 562 Pa. at 66, 753 A.2d at 236, but failed to offer *any* explanation or justification for the delay. Ergo, PennDOT's delay was unreasonable. See *id.*

Although we find waived the argument that we must compare this period of unreasonable delay attributable to PennDOT with five years of "inexcusable" delay caused by Dyer, we will nonetheless address the argument, if only to expose its factual inaccuracy. Initially, PennDOT's facile comparison of PennDOT's "three" years of delay with Dyer's supposed "five" years fails entirely to account for the seven months of delay between December 31, 1998, the date of Dyer's arrest and alleged refusal to submit to testing, and July 23, 1999, when the notice of suspension first issued. Whether or not, as Dyer's counsel alleged, the officer's submitting the refusal at that time was "retaliation" for Dyer's acquittal of the charge of driving under the influence, that seven-month delay is PennDOT's responsibility, or at least must be attributed to the Commonwealth and not the courts or Dyer. Adding the initial delay to the period conceded, we find the Commonwealth responsible for at least three

years and nine months of unexplained, and unreasonable, see *Fisher,* 682 A.2d at 1356, delay.

The next discrete time period we will deal with is the filing of Dyer's first appeal August 5, 1999. As the appeal was timely, 42 Pa.C.S. §5571(b), any delay incidental to the normal and orderly processing of the appeal is, at most, neutral, and cannot be attributed to Dyer. Simultaneously with filing the appeal, Dyer proved service on PennDOT's legal office as required by 75 Pa.C.S. §1550(a) and obtained a hearing date of September 27, 1999. This hearing date, which appears to have been selected at random by the court administrator, was actually premature, as the statute governing driver's-license appeals requires 60 days' notice to PennDOT of the hearing. *Id.,* section 1550(b). In any event, the date of the hearing, the court continued the matter indefinitely, to be relisted "upon further application of counsel/petitioner." License suspension order no hr'g held ll. 1-3, *PennDOT v. Dyer,* no. 99-13870 (Pa. C.P. Montg. Cty. Dec. 26, 2001). As stated, no reasons appear of record for continuance of the 1999 appeal. Also, the order continuing the matter appears to indicate service by mail and hand-delivery on the Commonwealth, but not petitioner. There is no notation on the docket of the 1999 case that the prothonotary gave the parties notice of the order as required by Pa.R.C.P. 236. It would be sheer speculation to say that the specific delay caused by the continuance was attributable to Dyer, PennDOT, or either of them. However, we do note that an additional delay of several weeks or possibly months would be built into the process of obtaining a new hearing after a continuance, especially upon "application." See Montg. Cty. C.C.R. 208.2(d), 208.3(a) (providing simplified procedure for

uncontested "motions"); Montg. Cty. C.C.R. 208.2(d) (providing local procedure for other "motions" including return day not less than 30 days from the date of filing of the motion); cf. Pa.R.C.P. 208.1(a) (" '[M]otion' means any application to the court for an order made in any civil action or proceeding . . . .").

We are comfortable with the proposition that, whether or not Dyer's counsel was properly notified of the order of continuance of September 27, 1999, and of the obligation to request a new hearing upon "application," he should have done something before year's end to inquire into the status of the case and move the case along. See *Gombocz,* 589 Pa. at 409, 909 A.2d at 801 ("The moving party has the burden to move the case forward."). Instead, nothing was done, and the appeal was terminated for inactivity December 26, 2001. This two-year period of inactivity was Dyer's responsibility.

As stated, the unreasonable delay that then ensued until PennDOT reissued notice of suspension February 4, 2005, is concededly PennDOT's. In performing the balancing act PennDOT now requests on appeal, we have thus far charged PennDOT with a total of three years and nine months' delay and Dyer with two years.

PennDOT also would attribute three years of the next long period of delay, up until the hearing was finally held in 2008, to Dyer. The calculus is not that simple.

On February 25, 2005, Dyer's counsel timely appealed the notice(s) of February 4, 2005 in the Chester County Court of Common Pleas. Counsel proved service on PennDOT's counsel (certification serv. at 1 and exhibit B) and promptly obtained a hearing date of May 5, 2005. (Prelim. order para. 1.) At this point the appeal was on

track for speedy disposition, and was just as quickly thrown off track again.

We do not know what transpired at the May 5, 2005 hearing in Chester County. We do know that the upshot of that hearing was an "agreed order," prepared under PennDOT's counsel's endorsement under Pa.R.C.P. 1025, transferring the appeal to Montgomery County "by agreement of the parties." (Agreed order ll. 1-2.) Transfer was improper under the statute governing venue of license-suspension appeals involving arrests for driving under the influence of alcohol and chemical testing under 75 Pa.C.S. §1547. 42 Pa.C.S. §933(a)(1)(ii) (appeals from government agencies). That statute lays venue in such matters in the county where the arrest occurred, *id.; accord Gombocz,* 589 Pa. at 405 n.3, 909 A.2d at 799 n.3 (quoting 42 Pa.C.S. §933(a)(1)(ii)), here Chester County. It matters not whether transfer to Montgomery County was for Dyer's convenience, PennDOT's, or both. (We note that the address of PennDOT's counsel is in Montgomery County.) PennDOT, the Commonwealth agency from which the appeal arose, should not have acquiesced in (or perhaps instigated) a transfer in derogation of the provision of the Judicial Code establishing venue in such appeals in the county of the arrest.

The Chester County record issued on May 13, 2005, and for undisclosed reasons was not filed in our court until June 29, 2005. At that point the case faced another long and unexplained drought in activity until finally being listed for a hearing by order dated December 20, 2007. We have no hesitation concluding that Dyer should have more actively prosecuted the appeal so as to obtain a hearing date at some sooner point within this hiatus. However, the fact remains she had *already properly*

*obtained* the hearing date of May 5, 2005, in the *proper venue,* Chester County, and that that hearing was never held due to PennDOT's obtaining, or at least actively participating in, an improvident transfer of venue to this court. We specifically attribute the delay of four or more months from the timely filing of Dyer's appeal in Chester County February 25, 2005, until June 29, 2005, when the record was filed here, to PennDOT, for imprudently foregoing a bird in hand to pursue one in the bush. Cf. *Howarth v. PennDOT,* 124 Pa. Commw. 39, 555 A.2d 285 (1989) (attributing delay to PennDOT and reversing denial of appeal of suspension where hearing of appeal was continued by agreement of parties at PennDOT's counsel's request and not relisted for six years), cited with approval in *Terraciano,* 562 Pa. at 66-67 and n.7, 753 A.2d at 236 and n.7. It stands to reason also that a built-in delay of several weeks or months more would follow once the record was filed before a hearing could be rescheduled, even had Dyer done everything in her power to have the hearing. We find this delay attributable to PennDOT; the case could have been decided in May 2005 had PennDOT respected the statute governing venue in appeals from government agencies and not procured a transfer in derogation of that statute. Cf. *Gombocz,* 589 Pa. at 409, 909 A.2d at 801-802 ("Appellee filed the initial appeal of his license suspension. The only question arose when PennDOT moved to have the case transferred to Bucks County, *as required by statute.* . . . Appellee brought the original action, and although PennDOT's motion to transfer venue was granted, that did not make it the moving party. Appellee acknowledged the transfer to Bucks County and made at least some effort to obtain a de novo hearing. . . . PennDOT is not

responsible for moving the case forward *unless circumstances exist making it reasonable to shift that burden to it.* . . . Those circumstances do not exist here. PennDOT took no action to become the moving party; it simply moved to transfer venue, *as prescribed by law."* (emphasis added) (citations omitted)). We attribute approximately two years of the delay that followed to Dyer, finding that it was her responsibility to move the appeal to hearing, or her counsel's to find out how to do so if he was unaware, once the record was filed here. At this point, we have attributed approximately four years of the overall delay in this case, more or less, to Dyer, and more than four years to PennDOT.

The delay that followed the order of December 11, 2007, scheduling a hearing de novo for March 3, 2008, we find, if not attributable to PennDOT, at least neutral in origin or due to lapses in judicial administration. True, the scheduling order, which was rubber-stamped with the signature of the court administrator, provided, "It is the petitioner's responsibility to notify the Commonwealth of Pennsylvania of this hearing." (Order para. 3.) However, right below that, the order bore witness of a courtesy copy to a Michelle A. Fioravanti, Esquire, who, from all indications, was in PennDOT's office of legal counsel. (As stated earlier, no lawyer from PennDOT, including counsel who attended the hearing, Joanne Faul, Esquire, has ever filed a formal written entry of appearance in this case as required by Montg. Cty. C.C.R. 1012*, and consequently there is no counsel of record reflected on the docket. Nor, for that matter, is any lawyer for PennDOT shown on this court's docket of the 1999 appeal. Montg. Cty. Pa. Pls. col. 4.) The scheduling order was not marked as received and filed by the pro-

thonotary until over two months later on February 26, 2008. However, at that time the prothonotary did not note in the docket that the parties were given notice of entry of the order, including a copy thereof, as required by Pa.R.C.P. 236(a)(2), (b). Cf. *Rea v. PennDOT,* 132 Pa. Commw. 145, 148-49 and n.2, 572 A.2d 236, 237 and n.2 (1990) (noting it was the court's obligation, not appellant's, to notify PennDOT of an order dismissing an appeal). Thereafter, this court on March 3 entered an order continuing the matter to June 30, 2008, noting on the order the mailing of a copy thereof to Joanne Faul, counsel for PennDOT. We do not find as a fact, as PennDOT maintains, that it was not served with notice of the March 3 hearing; we simply find, as both parties agree, that PennDOT did not attend. If this particular period of delay of over six months can be attributed to either party, it is PennDOT, not Dyer. Counsel for PennDOT has never, to this day, entered a formal written entry of appearance on this court's docket as required by local rule, Montg. Cty. C.C.R. 1012*, and never prior to the filing of the appeal to the Commonwealth Court filed any paper endorsed with counsel's name, phone number, and address for service under the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. 1025 (citing Pa.R.C.P. 440(a)). Cf. Pa.R.C.P. 205.1 and note (providing for endorsement on legal papers of an address where papers may be handed or mailed to the attorney under Pa.R.C.P. 440(a)(1)). (Such deficiencies were not present before the Chester County Court; the Chester County docket reflects an appearance and an address for a PennDOT attorney (Civil Ct. management system case summ. report at 1) and the "agreed order" transferring the matter here is endorsed by that attorney under Pa.R.C.P. 1025.)

We have performed the crude math PennDOT asks us to do and have arrived at a different bottom line. PennDOT argues it is responsible for "three" years of delay in this case while Dyer is responsible for "five" years of "inexcusable" delay. We figure Dyer is responsible for approximately four years of delay while PennDOT is responsible for well over four years of delay (three years and two months of it explicitly conceded by PennDOT) approaching five years, depending upon how the final six months leading up to the hearing before us June 30, 2008, is categorized. Further, while Dyer's delay may not be entirely "excused," it was at a minimum exacerbated by PennDOT's participation in transferring this matter from Chester County in May 2005 at a time when the case was ripe and ready to be heard.

The parties bear the burden of approximately four years of delay apiece in this case. Unreasonable delay alone, however, is only part of the inquiry we must make in determining whether to sustain a license-suspension appeal. We must also determine whether the delay chargeable to PennDOT led the licensee to believe her operating privileges would not be impaired and whether prejudice would result if privilege were suspended after such delay. *Terraciano,* 562 Pa. at 66, 753 A.2d at 236.

We have long since—ever since PennDOT's counsel admitted at the hearing that the delay December 26, 2001-February 4, 2005 was PennDOT (hr'g appeal license suspension at 5)—gone over the hurdle set by the *Gombocz* decision. There, the Supreme Court of Pennsylvania found it need not reach the question of prejudice to the licensee since there was no delay attributable to PennDOT in the case. 589 Pa. at 410 n.6, 909 A.2d at 802 n.6 (holding where a licensee appealed notice of

suspension for refusing to submit to chemical testing, appeal was transferred on PennDOT's motion to county where arrest occurred under 42 Pa.C.S. §933(a)(1)(ii), and four years of delay in the transferee court followed before hearing was held, delay was not attributable to PennDOT because the burden never shifted from the moving party/licensee to move the case forward); cf. *Terraciano,* 562 Pa. at 64-67 and nn.8, 9, 753 A.2d at 234-38 and nn.8, 9 (holding where PennDOT appealed an order granting a licensee's appeal of her suspension, Commonwealth Court remanded the matter for an evidentiary hearing, and the case languished without a hearing for approximately seven years, unreasonable delay was attributable to PennDOT; where PennDOT fails to move a case forward under circumstances where it should reasonably be expected to do so the delay is attributable to PennDOT); *Orloff v. PennDOT,* 912 A.2d 918 (Pa. Commw. 2006) (en banc) (extending the *Terraciano* holding to a PennDOT appeal remanded by Commonwealth Court for consideration of a legal issue followed by an unreasonable five-year delay); *Howarth v. PennDOT,* 124 Pa. Commw. 39, 555 A.2d 285 (1989) (reversing denial of appeal of suspension where hearing of appeal was continued by agreement of parties at PennDOT's counsel's request and not relisted for six years). Having found that a majority, or at least a sizeable plurality, of the delay in this case was attributable to PennDOT—a fact and a finding PennDOT never contested—we come full circle to the only issues actually framed and presented at the hearing in this case, Dyer's reliance on PennDOT's inaction in believing her license was unimpaired and the prejudice that would result were the license to be suspended after all this time.

### 3. *Did Licensee Show Prejudice/Change in Circumstance During PennDOT's Delay?*

PennDOT's unreasonable delay in reissuing the suspension having been established (ever since the day of the hearing), the standard becomes whether the unreasonable delay led petitioner to believe her operating privileges would not be impaired and prejudice would result by having the operating privileges suspended after such delay. *Terraciano,* 562 Pa. at 66, 753 A.2d at 236. PennDOT insists on a showing of a change in circumstance during the discrete period between December 26, 2001, and February 4, 2005, when PennDOT admittedly unreasonably delayed the suspension. However, the standard, as enunciated by the courts of this Commonwealth, is "prejudice"; a change in circumstance may be evidence of prejudice, but the courts evince no requirement that all actions a licensee may have taken in reliance on the belief her license was safe from suspension must have occurred during the strict time frame of PennDOT's delay.

Petitioner testified that in 2003 (about the middle of the three-plus-year unexplained delay attributable to PennDOT) she reapplied for her license and PennDOT gave her a new one. (Hr'g appeal license suspension at 12-13.) Although she had some violations during this period and the police told her she would get points, PennDOT sent her no notice of any points or suspension and she believed her license was intact. (*Id.* at 13-14.) She thought it important to further her pursuit of a nursing degree at that time and in 2002 and 2003 she went to Montgomery County Community College to take prerequisites for the RN program. (*Id.* at 10-11.) She was also working full-time and needed her driver's license

to get to and from the classroom and work. *(Id.)* More recently she continued the same course of study at a different institution closer to home but still 20 or so miles away. (*Id.* at 11.) She was presently enrolled there and on the honor roll expecting to graduate, and would be looking for a job in the immediate area. (*Id.* at 12.)

Petitioner's testimony was brief, but uncontradicted. PennDOT's counsel unearthed no meaningful inconsistencies in the testimony on cross-examination, and offered no contrary evidence of her own. We found petitioner's testimony to be credible. On appeal from an order sustaining a licensee's appeal of a driver's-license suspension,

"Determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder. As fact-finder, the trial court may accept or reject the testimony of any witness in whole or in part. Conflicts in the evidence are for the trial court to resolve and are improper questions for appellate review." *Reinhart v. PennDOT,* 954 A.2d 761, 765 (Pa. Commw 2008). (citations omitted)

The appellate court must determine the case under the facts found by the trial court and not under the testimony PennDOT prefers. *Id.* at 765-66. Applying the appellate standards to the testimony we found believable, we find that due to PennDOT's delay petitioner believed her operating privilege would not be suspended and that to suspend the privilege now would prejudice her.

Where, as here, PennDOT reinstates or restores a licensee's operating privilege or leads her to believe the privilege is intact during an unreasonable delay in seeking suspension of the privilege, the appellate courts have found prejudice to the licensee. For example, in *Terra-*

*ciano,* the sole prejudice the Pennsylvania Supreme Court found in overturning an order denying a license-suspension appeal seven years after the Commonwealth Court remanded PennDOT's appeal to the trial court was that the licensee had during that delay obtained her commercial driver's license and been employed as a school bus driver. 562 Pa. at 68, 753 A.2d at 237 ("PennDOT issued [the licensee's] commercial driver's license, which would certainly lead her to believe that her driving privileges were no longer impaired.").

In *Fisher v. PennDOT,* 682 A.2d 1353 (Pa. Commw. 1996), the licensee filed an appeal of his suspension one day late, interpreted notice of his error as a denial of his appeal, and assumed his license would be suspended. 682 A.2d at 1355. Neither party took any further action on the appeal, and it was finally terminated for inactivity about four years later. *Id.* Meanwhile PennDOT restored the licensee's operating privileges on two subsequent occasions. *Id.* At trial the licensee testified he repeatedly contacted PennDOT to determine the status of his license and was assured it was restored and there was no problem. *Id.* at 1356. Based on these assurances and PennDOT's failure to reinstate the suspension the licensee (about three months after filing the untimely appeal) opened a business that required him to have a license to make deliveries. *Id.* PennDOT did not issue a new notice of suspension until about the time the appeal was terminated four years later. *Id.* at 1355-56. The Commonwealth Court affirmed the trial court's order sustaining the licensee's appeal of the new notice, finding substantial evidence to support the determinations of unreasonable delay by PennDOT and prejudice if the license were then suspended. *Id.* at 1356.

In *Rea v. PennDOT,* 132 Pa. Commw. 145, 572 A.2d 236 (1990), which *Terraciano* cited for the proposition that renewing a license is evidence of reliance on PennDOT inaction, 562 Pa. at 68, 753 A.2d at 237, the court reversed the trial court's order sustaining PennDOT's reinstatement of a licensee's suspension 10 years after the dismissal of his appeal where, despite notice in the interim that a later violation would result in points depending on the outcome of the appeal, the licensee renewed his license throughout the 10-year period in reliance on PennDOT's inaction and became continuously employed by an auto dealership that he then inherited and for which a driver's license was integral. Cf. *Orloff v. PennDOT,* 912 A.2d 918 (Pa. Commw. 2006) (en banc) (reversing an order denying license-suspension appeal previously appealed by PennDOT to Commonwealth Court and remanded followed by five-year delay where licensee testified he thought the trial court had ruled in his favor and neither checked the status of his license with PennDOT nor received notification the case was over but made several business and financial changes he would not have made had he known his license could be suspended).

We also find Dyer changed her position in reliance on the belief her license would not be suspended by pursuing her studies towards an RN program at a distant college requiring a commute, which she may not have chosen to invest time and resources into had she known her studies, or a possible job in the nursing field after their completion, could be interrupted by suspension of her license. The authorities indicate the change in position a licensee undertakes in reliance on PennDOT's delay in issuing a suspension is viewed in the context of

reliance on the unreasonable delay itself in assuming privileges would not be impaired and not necessarily on a strict cause-and-effect analysis.

For example, in *Lancos,* PennDOT sent four notices of suspensions. 689 A.2d at 343. On appeal the court of common pleas sustained the appeal in part, vacating two of the suspensions and directing PennDOT to impose only the other two, for 90 days and one year respectively. *Id.* PennDOT appealed to the Commonwealth Court, which affirmed the lower court on December 7, 1993. *Id.* On February 11, 1994, the Commonwealth Court denied PennDOT's petition for reargument. *Id.* Before the Commonwealth Court's order of affirmance, PennDOT notified the licensee that his operating privileges had been restored from a prior unrelated suspension. *Id.* As a result of having his driving privileges restored, the licensee was promoted from a job that did not require him to drive to a job that required him to drive his employer's company van. *Id.* Over 20 months passed from the Commonwealth Court's affirmance of the trial court when finally, on August 29, 2005, PennDOT sent the licensee notices of the effective dates of the two suspensions that the courts had left in place. *Id.* In the meantime, the job the licensee had formerly had that did not require him to operate a motor vehicle became unavailable to him, and he had several other arrangements requiring him to drive, including a schedule of partial custody with his children, who lived 10 miles away, and becoming active in Little League and Boy Scouts, which required travel to other towns. *Id.* at 344. The licensee appealed the new notices of suspension, and the trial court vacated them, holding PennDOT's 20 months of inaction constituted an unreasonable delay and the li-

censee had been prejudiced by the department's inaction. *Id.* On appeal to the Commonwealth Court, the court relied on PennDOT's counsel's concessions at argument in the trial court that the period of delay was administrative in nature and attributable entirely to PennDOT. *Id.* at 344-45. "Thus, as the trial court subsequently concluded, the delay in this case is both unreasonable under the circumstances and attributable to the department, and the department has not challenged this fact on appeal." *Id.* at 345. The court rejected PennDOT's argument that the licensee had not shown prejudice from the delay by competent evidence of record. *Id.* The court cited the licensee's testimony that he thought his suspension was fulfilled and that when he got his license back he got promoted to his driving job and in reliance on the belief his operating privileges would not be suspended began the other activities with his children described. *Id.* at 345-46. The court specifically rejected PennDOT's argument that the licensee had failed to show prejudice because he had accepted the promotion to the driving job before the Commonwealth Court's denial of PennDOT's petition for reargument. *Id.* at 346-47. The court found that when PennDOT restored his license (*before* the court's decision in PennDOT's appeal) the licensee believed he had fulfilled all his outstanding suspensions. *Id.* at 346 and n.9.

In *Fisher,* the licensee filed an untimely appeal of PennDOT's notice of suspension, and upon being notified of this procedural default by the court believed that his appeal was denied and his license would be suspended. 682 A.2d at 1355. However, neither party took any further action on the appeal and PennDOT restored the licensee's operating privileges on two subsequent occasions. *Id.* At

trial of the matter the licensee testified that in repeated contacts with PennDOT it assured him his license would be restored and there would be no problem. *Id.* at 1356. In the meantime, only about three months after filing the untimely appeal, the licensee opened a delivery service requiring him to have a license to make deliveries for the business. *Id.* About three years after the filing of the untimely appeal, when it had been terminated for inactivity, PennDOT reinstated the suspension, and the licensee appealed. *Id.* at 1355. The trial court concluded that a suspension at that time would force him to close his business and that he would thus suffer prejudice, and sustained the appeal. *Id.* at 1356. The Commonwealth Court affirmed the trial court, finding that PennDOT was not precluded by automatic supersedeas from reinstating the suspension earlier because the initial appeal was untimely, and that instead of moving immediately to quash the appeal PennDOT unreasonably delayed three and a half years before reinstating the suspension. *Id.* at 1355-56. The court also affirmed the trial court's ruling that the licensee's opening a business that required a license in reliance on PennDOT's inaction (only three months after the filing of the untimely appeal) demonstrated the requisite prejudice to the licensee. *Id.* at 1356.

Dyer has established the prejudice necessary to sustain her appeal of PennDOT's reinstatement of suspension of her license after an unreasonable delay of three years and two months. Almost two years after her initial appeal of the suspension was terminated on the docket for inactivity in December 2001, PennDOT renewed her license in August 2003. Despite further driving incidents involving the accumulation of points, she received no

further notice of suspension from PennDOT, and relied on PennDOT's inaction in believing her license was no longer in jeopardy. During and in reliance on PennDOT's delay, she changed her position by pursuing a course of study in an RN program at a point distant from home to which she had to drive, and she was expecting to finish the program and take a job in the field upon graduation. Then, in February 2005, when she had already taken long and substantial strides towards entering her new career, PennDOT out of the blue, after an unexplained and unreasonable delay of three years and two months, attempted to reinstate the suspension. We find Dyer "would suffer prejudice if [her] license were now suspended." *Fisher,* 682 A.2d at 1356.

### 4. *Did the Court Consider Documents Not of Record?*

We acknowledge PennDOT's position that documents attached to a party's brief are not evidence. See *Chrysczanavicz v. Chrysczanavicz,* 796 A.2d 366, 369 n.5 (Pa. Super. 2002) (noting a letter from an insurance company purporting to outline a policy attached to a party's motion for reconsideration in the Court of Common Pleas did not constitute entry of the policy into evidence and was part of the certified record only because it was attached to the motion); cf. Pa.R.A.P. 1921 and note (concerning the composition of the record on appeal); *PennDOT v. Soder,* 110 Pa. Commw. 492, 494 n.1, 532 A.2d 948, 949 n.1 (1987) ("The appellee attached to his brief a copy of an order purportedly adjudicating him as bankrupt. That order does not appear in the record certified to this court and, hence, is not before us in evidence."). We do not accept PennDOT's argument, however, that we relied on documents attached to petitioner's brief in making our

finding that she was prejudiced by PennDOT's three-plus years of unreasonable delay in suspending her license.

The documents complained of were handed up to the court at the hearing and then taken back afterward because they were petitioner's counsel's only copies. They consisted of a copy of Ms. Dyer's driver's license issued by PennDOT in August 2003 valid through August 2007 (hr'g appeal license suspension at 10-11) and a transcript and letter from the Center for Arts and Technology in Coatesville indicating Ms. Dyer was on the honor roll and due to graduate soon. (*Id.* at 12.) These papers were by no means crucial to the court's decision, and in any event Ms. Dyer herself testified to the substance of their contents. (*Id.* at 10-13.)

PennDOT never argued, nor could it, whether it renewed Ms. Dyer's license in 2003 as she testified. (*Id.* at 12-13.) As her counsel pointed out, the renewal of her expired license in 2003 would be in PennDOT's records as well. (*Id.* at 9-10.) (PennDOT's counsel also handed up to the court, with no more formality than Dyer's counsel's presentation, exhibits consisting of Dyer's official driving record certified from PennDOT. (*Id.* at 2, 15-16.) Counsel never formally moved for admission of the driving record into evidence. We leave this defect in the record on appeal to the Commonwealth Court's determination. Suffice it to say PennDOT has waived any claim about Dyer's license being renewed in 2003.) Whether the renewed license expired in August 2007 would also be apparent from PennDOT's records. However, this factor is largely irrelevant to the court's decision, as we did not hear evidence on the issue of prejudice to Dyer during the period following expiry of the license. (See *id.* at 23-24 (entertaining counsels' argu-

ments that petitioner had been prejudiced by going a year without a license and that that was an issue of credit not before the court to be taken up through Harrisburg).)

Similarly, Ms. Dyer testified she was on the honor roll at the Center for Arts and Technology studying nursing and expected to graduate soon. (*Id.* at 11-12.) The papers counsel submitted in support of this testimony added nothing of great substance. Moreover, Ms. Dyer testified she had transferred to the Center recently and that it was closer to home than Montgomery County Community College, which she had started in 2002 and 2003 and to which she needed to drive. (*Id.* at 10-12.) The testimony and papers concerning the Center thus spoke largely to a period outside the window of PennDOT's unreasonable and unexplained delay between December 26, 2001 and February 4, 2005.

There is simply no merit to PennDOT's argument. Our rescission of PennDOT's suspension of petitioner's license based on the conclusion it would prejudice her to suspend the license now after PennDOT's unreasonable delay should be affirmed.

## CONCLUSION

Based on what we have seen, PennDOT seems bent on a policy of negligently administratively delaying notifying licensees of suspensions, and then punitively years later when people least expect it hitting them with suspensions from years ago. In these trying economic times, PennDOT, an agency of the Commonwealth funded by taxpayers' dollars, perhaps ought to consider making its administrative mechanisms for issuing timely notices more efficient and stop devoting so much in

resources to stale cases that have long since faded in everyone's memory.

In conclusion, the Commonwealth Court of Pennsylvania should affirm our order rescinding PennDOT's suspension of Bambi Dyer's driver's license after over three years of unexplained, unreasonable, prejudicial delay. The appeal of the suspension was timely filed within the 30-day statutory deadline, and there is no authority for PennDOT's argument raised for the first time on appeal that this court lacked jurisdiction of the appeal because it somehow was not prosecuted within the time frame set by an agreed order prepared by PennDOT improvidently transferring the matter from the county of proper venue where the appeal was filed, or somehow was not perfected in this court within a 40-day deadline the origin of which PennDOT has never explained. PennDOT has waived its argument on appeal—an argument for which we know of no authority—that we must balance the three-plus years of delay for which PennDOT is admittedly responsible against other delays in the case by conceding at the hearing of the matter that PennDOT would lose the appeal should petitioner prove prejudice within the three-year time frame, and furthermore we have found that much of the additional delay—in total more than was attributable to petitioner—was attributable to PennDOT as well. Petitioner proved that she relied to her detriment on the belief her license was intact and suffered prejudice during PennDOT's three-plus years of unreasonable delay in reissuing notice of suspension by testifying that PennDOT renewed her license during that period and she pursued a course of study to become and seek employment as a nurse at locations distant from her home

so that driving privileges would be necessary. This court did not rely on documents handed up at the hearing and later attached as exhibits to a brief consisting of a copy of petitioner's driver's license issued in the middle of the period of delay and transcripts of schooling and honor status; petitioner testified at the hearing to the same facts the exhibits demonstrated, the certified driving record submitted by PennDOT at the hearing showed the same date of issuance of the driver's license, and PennDOT did not formally move to admit into evidence the driving record, either, so that if only evidence formally admitted is considered, the record on appeal consists only of petitioner's testimony, the arguments of counsel made at the hearing, and the procedural facts shown in the records of this court. We respectfully ask the Commonwealth Court to affirm our order rescinding PennDOT's suspension of petitioner's driver's license.